DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, David English, et al, appeal from the judgment of the Summit County Court of Common Pleas, which granted the motion to stay pending arbitration of Appellee, Cornwell Quality Tools ("Cornwell"). We affirm.
 {¶ 2} Appellants were former franchisees of Cornwell in which they were dealers of the company's automotive tools and equipment. As dealers, Appellants sold Cornwell tools from inventory that they purchased wholesale from the company, were required to purchase or lease a Cornwell truck or van, and carry applicable insurance. Typical customers for a Cornwell dealer were service stations, car dealerships, mechanics and other auto repair-related businesses. Appellants all suffered the failure of their franchises, which they claim resulted in substantial financial losses. Appellants signed Cornwell contracts that appear to be identical, or extremely similar, in all the terms, and given additional franchise information. Cornwell was responsible for drafting these contracts, including the arbitration clause, and did not negotiate any of the contracts terms with any of the Appellants. Appellants contend that they were misled as to numerous aspects about being a Cornwell tool dealer, including the necessary startup investment costs, capital, recurring costs, potential income, risks and their chances of success.
 {¶ 3} Appellants filed their initial complaint on July 22, 2004, listing the following causes of action: Common Law Deceptive Trade Practices, Violation of the Ohio Consumers Sales Practices Act, Violation of Ohio Business Opportunity Statute, Fraud, Fraud in the Inducement, Consumer Fraud, Negligent Misrepresentation, Breach of Contract, Breach of Fiduciary Duty and Declaratory Judgment. The complaint was subsequently amended on September 22, 2004, December 6, 2004 and January 3, 2005, to add numerous additional plaintiffs.
 {¶ 4} Appellee filed Motions to Stay Proceedings Pending Arbitration on July 30, 2004, November 4, 2004, December 16, 2004 and January 21, 2005, and Appellant filed responses to each of these motions. An evidentiary hearing on the matter of the arbitration clause was held on February 23, 2005. Following the hearing, the trial court issued an order which addressed 1) the enforceability of the arbitration clause in the contract, including whether or not the clause was unconscionable, both substantively and procedurally, and 2) whether the signed contracts were adhesion contracts, which would therefore render the arbitration clauses unenforceable. The trial court concluded that Appellants failed to prove that the arbitration clause is unconscionable, as set forth in Eagle v. Fred Martin Motor Co.,157 Ohio App.3d 150, 2004-Ohio-829, and granted Appellee's Motions to Stay Proceedings. It is from this order that Appellants now appeal, citing one assignment of error.
 ASSIGNMENT OF ERROR
"The arbitration clause at issue is both substantively and procedurally unconscionable, and therefore unenforceable in its entirety."
 {¶ 5} In their sole assignment of error, Appellants argue that the arbitration clause was substantively and procedurally unconscionable, and that the issues "fell squarely within the precedent" set forth by this Court in Eagle. Specifically, Appellants assert that the high cost of arbitration, including undisclosed costs, plus the disparity between parties as far as education and experience made the arbitration clause unconscionable. We disagree.
 {¶ 6} This court reviews a trial court's stay of proceedings pending arbitration under R.C. 2711.02 for an abuse of discretion. Pinette v. Wynn's Extended Care, Inc., 9th Dist. No. 21478, 2003-Ohio-4636, at ¶ 5. An abuse of discretion suggests more than a mere error of judgment or law, but indicates that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. The issue of unconscionability is a question of law.Bank One, N.A. v. Borovitz, 9th Dist. No. 21042, 2002-Ohio-5544, at ¶ 12, citing Ins. Co. of N. Am. v. AutomaticSprinkler Corp. (1981), 67 Ohio St.2d 91, 98. As such, we will review the trial court's decision de novo. See Hollinger v.Keybank Natl. Assn., 9th Dist. No. 22147, 2004-Ohio-7182, at ¶7; Eagle at ¶ 13.
 {¶ 7} Ohio's public policy encourages arbitration as a method to settle disputes. Schaefer v. Allstate Ins. Co. (1992),63 Ohio St.3d 708, 711-712. An arbitration provision may, however, be unenforceable on grounds existing at law or in equity for the revocation of a contract. R.C. 2711.01(A). One of those grounds is unconscionability. See Eagle at ¶ 29. As we previously defined in Eagle, an arbitration clause is unconscionable when "the `clauses involved are so one-sided as to oppress or unfairly surprise [a] party.' Neubrander v. Dean Witter Reynolds, Inc.
(1992), 81 Ohio App.3d 308, 311-312, quoting Black's Law Dictionary (5th Ed.Rev. 1979) 1367." Id. at ¶ 32. The party seeking to establish that an arbitration clause is unconscionable must show that the provision is both procedurally and substantively unconscionable. Id. at ¶ 30, citing Collins v.Click Camera Video, Inc. (1993), 86 Ohio App.3d 826, 834.
 {¶ 8} Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible. Bushman v. MFC Drilling (July 19, 1995), 9th Dist. No. 2403-M, at 6, citing Collins, 86 Ohio App.3d at 834. In order to determine whether a contract provision is procedurally unconscionable, courts consider the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed. Eagle at ¶ 31.
 {¶ 9} Substantive unconscionability refers to the actual terms of the agreement. Contract terms are substantively unconscionable if they are unfair and commercially unreasonable. Id. at ¶ 31; Bank One at ¶ 16, citing Dorsey v. ContemporaryObstetrics Gynecology, Inc. (1996), 113 Ohio App.3d 75, 80. In order to determine whether a given contract provision is unconscionable, courts must examine the particular facts and circumstances surrounding the agreement. Lightning Rod Mut. Ins.Co. v. Saffle (Nov. 6, 1991), 9th Dist. No. 15134, at 3-4. We now review what information was provided to Appellants.
 {¶ 10} Section 20 of the Cornwell Quality Tools Company Dealer Franchise Agreement states:
"Any claim or controversy in connection with, arising out of, or relating to the Agreement between Dealer and Cornwell shall be settled by binding arbitration in accordance with the rules pertaining to commercial dispute arbitration then existing with the American Arbitration Association. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. Such arbitration shall take place in such locations as the parties mutually agree, and in the absence of agreement, in Akron, Ohio. The laws applicable to the arbitration procedure shall be the laws of the State of Ohio. The award of the Arbitrator(s) shall be the sole remedy between the parties regarding any claims, counterclaims, issues presented or pled to the arbitrator(s)."
 {¶ 11} The Cornwell Franchise Circular, which was given to Appellants prior to entering their franchise agreements, stated in capital letters on page one:
"Risk Factors:
"* * *
"2. THE FRANCHISE AGREEMENT REQUIRES THAT ALL DISAGREEMENTS BE SETTLED BY ARBITRATION IN OHIO. OUT OF STATE ARBITRATION MAY FORCE YOU TO ACCEPT A LESS FAVORABLE SETTLEMENT FOR DISPUTES. IT MAY ALSO COST YOU MORE TO ARBITRATE WITH US IN OHIO THAN IN YOUR HOME STATE."
 {¶ 12} Furthermore, the Franchise Circular contains, in Item 17, a table which lists specific provisions, the section of the Franchise Agreement where they are located, and a summary of each provision. Here, Cornwell's instructions state: "This table lists important provisions of the franchise and related agreements. You should read these provisions in the agreements attached to this offering circular." One of the provisions listed in this table is the arbitration provision. In addition, the document entitled "Cornwell Dealer Purchase Order, Note and Security Agreement" also contains the same arbitration clause as found in Section 20 of the Dealer Franchise Agreement. Considering the multiple locations where Cornwell references the arbitration provision, it is clear to this Court that Cornwell did not hide its arbitration clause in fine print or fail to disclose it to its potential franchise dealers. Thus, we turn to analyzing whether or not the arbitration clause was unconscionable.
Substantive Unconscionability
 {¶ 13} Appellants argue that the costs associated with arbitration make the clause substantively unconscionable because "it imposes undisclosed, excessive and prohibitive costs." Appellants state that they were unaware of the fees charged to pursue arbitration, as there was no language in the arbitration clause itself that gave notice as to the costs involved, and thus the arbitration clause is not a "commercially reasonable" term.
 {¶ 14} When analyzing whether or not the cost of arbitration are prohibitive, the United States Supreme Court and the Ohio Supreme Court have taken a case-by-case approach. Green TreeFinancial Corp. — Alabama v. Randolph (2000), 531 U.S. 79;Willams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464 (finding that a party's agreement to arbitrate is not rendered unenforceable merely because it is silent as to the costs of arbitration).
 {¶ 15} In support of their arguments, Appellants rely onEagle and Popora v. Gatliff Building Co.,160 Ohio App.3d 843, 2005-Ohio-2410. In both cases, this Court found that an arbitration clause in a consumer contract was unconscionable because the costs of arbitration were prohibitive, unreasonable and unfair. Furthermore, in Popora, we found the arbitration clause to be unconscionable because it was unfairly skewed in favor of the contractor. The home buyer was prohibited from commencing arbitration until the contractor had certified substantial completion, forcing the buyer to wait in seeking relief, in addition to incurring the substantial costs of arbitration.
 {¶ 16} As in Eagle, Appellants assert that the various costs associated with the arbitration proceedings are exceedingly high. Pursuant to the AAA fee schedule, a claim for $150,000 to $300,000 incurs an initial filing fee of $2750.00 and a case service fee of $1250.00. A claim for $300,000 to $500,000 incurs an initial filing fee of $4250.00 and a case service fee of $1750.00. Additionally, the AAA Rules and Procedures state, under the heading of Administrative Fees: "The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award." Appellants would be responsible for paying an arbitrator's rate, which ranges from $195.00 to $285.00 per hour, or incur a rate of $1500.00 or $1900.00 per day. Separate, additional fees are charged to rent hearing rooms, according to the AAA, and Rule 50 states that each party is responsible for his witnesses' expenses, in addition to equally sharing the expenses of the arbitrator, AAA representatives, and additional witnesses.
 {¶ 17} We do not dispute that the cost of arbitration may be higher than it would be to litigate in court, but we also note that litigating claims this large, with numerous parties, could possibly result in substantial legal fees and costs that exceed arbitration. Many Appellants are from out of state, and the time and cost involved with litigation and a possible appeal may well exceed the arbitration costs. As in Garcia v. Wayne Homes,
L.L.C., 2d Dist. No. 2001 CA 53, 2002-Ohio-1884, Appellants in this case have not produced any evidence of the expected cost differential between arbitration and litigation in court. Id. at ¶ 74. Although Appellants provide the fee table and rules from the AAA, we agree with the Garcia Court's reasoning that these costs could easily be exceeded by litigation expenses, both at the trial court and appellate level. When reviewing the GreenTree Court's analysis, the Garcia Court stated,
"Though some expenses may be inherently speculative, the [U.S. Supreme] Court noted that generic information contained in AAA Commercial Rules and unsupported statements [of the parties' possible costs] were not enough to satisfy the party's burden of providing factual proof that the costs were prohibitively expensive." Id. at ¶ 69.
 {¶ 18} However, we also do not dispute that the costs to arbitrate such a potentially large claim would be expensive for Appellants, regardless of what kind of financial situation they are in. Keeping such issues in mind, we agree with the trial court when it was unable to find that "the potential cost for arbitration, by itself, is enough to render the clause unenforceable." As other Ohio courts have concluded, "proof of cost alone is not sufficient to prove that arbitration would be a prohibitively expensive and unreasonable alternative to litigation."[1] Garcia at ¶ 2; see, also, O'Donoghue v.Smythe, Cramer Co., 8th Dist. No. 80453, 2002-Ohio-3447, at ¶ 30, citing Green Tree Fin. Corp., 531 U.S. 79.
 {¶ 19} We are unable to find that the terms of Cornwell's arbitration clause are commercially unreasonable, and we find the arbitration clause did not contain any restrictive precedents, as was found in Popora.
 Procedural Unconscionability
 {¶ 20} Appellants claim that the arbitration clause is also procedurally unconscionable because there was no meeting of the minds between Appellants and Cornwell regarding arbitration. As we set forth in Eagle, the factors to be considered are the "bargaining position of the contracting parties, including age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract." Id. at ¶ 31.
 {¶ 21} Appellants claim Cornwell discouraged them from even reading the contract before signing it and that the bargaining power between the two sides was disparate enough to create procedural unconscionability. Appellants assert the lack of education on their part and inexperience in entering into franchise agreements created unconscionability when compared with the education and experience of Cornwell's managers. Additionally, Appellants contend Cornwell never explained the terms of the arbitration clause, fees or the Franchise Agreement to them, nor did anyone from Cornwell suggest to them that they should be represented by counsel.
 {¶ 22} This Court is not persuaded by such arguments. All of the Appellants could have sought out professional advice, either from an attorney or an accountant, prior to signing the contract. Cornwell was not under obligation to explain the arbitration clause, and the company was not remiss when it failed to suggest that each Appellant read the contract carefully or obtain counsel. In ABM Farms, Inc. v. Woods (1998), 81 Ohio St.3d 498, the Ohio Supreme Court held that there is no requirement that an arbitration clause be explained orally to a party prior to signing when the provisions at issue were not in fine print, were not hidden from the party, were part of an industry standard and were not misrepresented to the signatory. Id. at 503.
 {¶ 23} Although many of the Appellants' education levels do not exceed high school, several of the individuals had experience in the tool business or had some other business experience. English had previously been with a competitor of Cornwell, Snap-On Tools, as a successful franchise dealer for nearly two years. He then became a field manager for Snap-On, where he oversaw the progress of other franchise dealers, and ended his tenure with Snap-On as a special representative. English testified that he had never read his contract with Snap-On Tools when he was a dealer or a manager, had not read his contract with Cornwell, and had not read the contract he signed when he hired his counsel. He stated that he had trusted Cornwell and its representations, and also relied on the assurances of friends who had experience in the tool business. Prior to seeking out a Cornwell franchise, English had also talked to one of Cornwell's three other competitors, Mac Tools.
 {¶ 24} Appellants' affidavits on the record indicate that many of them "skimmed" the Franchise Agreement and Circular and acknowledged they did not understand what they were reading, some stated that they read the documents but did not know there was an arbitration clause contained within any of what they had read, and some individuals stated that they did not read the documents at all. As the trial court specifically emphasized during the evidentiary hearing, we also stress the well-settled principle that a person who is competent to contract and who signs a written document without reading it is bound by its terms and cannot avoid its consequences. Hook v. Hook (1982),69 Ohio St.2d 234, 238, citing Kroeger v. Brody (1936),130 Ohio St. 559, 566. As the Supreme Court stated in ABM Farms:
"`A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed.' McAdams v. McAdams (1909), 80 Ohio St. 232,240-241, 88 N.E. 542, 544. See, also, Upton v. Tribilcock
(1875), 91 U.S. 45, 50, 23 L.Ed. 203, 205 (`It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written.'). The legal and common-sensical axiom that one must read what one signs survives this case." Id. at 503.
 {¶ 25} The Garcia Court also addressed this issue when it explained,
"Ordinarily, one of full age in the possession of his faculties and able to read and write, who signs an instrument and remains acquiescent to its operative effect for some time, may not thereafter escape the consequences by urging that he did not read it or that he relied upon the representations of another as to its contents or significance." Id. at ¶ 43, quoting Kroger,130 Ohio St. at 566.
 {¶ 26} Based on the foregoing analysis, we cannot agree with Appellants' argument that the arbitration clause was procedurally unconscionable. Even if the majority of Appellants did not have experience in entering into franchise agreements in the past, the arbitration clause was posted clearly on the front page of Cornwell's Franchise Circular under the heading "Risk Factors." Appellants did not question what the arbitration clause meant, even though some of them stated they did not know what was involved in arbitration, and none of them sought outside advice despite the fact that this was a commercial transaction involving a high level of financial commitment. We are unable to find substantive or procedural unconscionability in Cornwell's arbitration clause.
 {¶ 27} This Court notes that Appellants repeatedly cite to our previous decisions in Eagle and Popora in an effort to make this case analogous to those previous decisions. However, we find this case to be factually distinct from Eagle andPopora, and thus we cannot agree with Appellants' arguments.Eagle involved a low-income, single mother who entered into a consumer transaction to purchase an inexpensive automobile with an auto dealership, and ended up having to purchase a replacement vehicle because of the initial vehicle's failure. Ms. Eagle also did not have any knowledge of cars or the automobile business, and thus we found that the costs of arbitration were prohibitive. The Popora case also involved a consumer transaction, where a husband and wife contracted with a home builder. In both these cases, we found these consumer transactions were ones of necessity, and both involved the Consumer Sales Practices Act.
 {¶ 28} The most substantial difference between this case,Eagle and Popora is that this case does not involve a consumer transaction for a necessity, such as a car or a house, but a full-time business venture. As the trial court stated, "[t]his Court does not find a franchise agreement business opportunity with a specific tool company to be necessary [sic.] on the same level." Here, a commercial business transaction took place with individuals who voluntarily sought out Cornwell Tools in an effort to become franchise dealers. Each Appellant chose to be a Cornwell dealer and was aware of the financial commitment involved with the tens or hundreds of thousands of dollars involved in buying the tools, or having Cornwell finance the cost of the tools, and leasing a vehicle. Anyone entering into a commercial contract has the burden of assuring themselves of what they are taking part in. Although a commercial contract may potentially lead to great financial gain, it also has innate financial consequences. A business that includes substantial initial startup costs, as a Cornwell franchise does, plus additional costs if the venture fails, is logically known to have greater financial risks.
 {¶ 29} Furthermore, the Supreme Court in ABM Farms pointed out that "To defeat a motion to stay brought pursuant to R.C.2711.02, a party must demonstrate that the arbitration provisionitself in the contract at issue, and not merely the contract in general, was fraudulently induced." Id., at syllabus. (Emphasis added.) We are not persuaded that Appellants have demonstrated that they were fraudulently induced to enter into the arbitration clause, as the majority of their argument is centered on the unfairness and deception of Cornwell's contract and practices. We can find no evidence or duress or coercion on the part of Cornwell, as the Appellants voluntarily chose to become Cornwell dealers. As the Supreme Court distinguished, the "naked truth" behind Appellants' claim is that they did not read, did not read carefully, or read and did not understand Cornwell's documents. Id. at 503.
 {¶ 30} We overrule Appellants' assignment of error and affirm the judgment of the Summit County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Exceptions.
Whitmore, J. concurs
[1] We note that there is no language in Garcia that would require a court to consider arbitration costs when reviewing the issue of unconscionability.