**BALL et al., Appellees,**

v.

**OHIO STATE HOME SERVICES, INC., d.b.a. Ohio
State Waterproofing, Appellant, et al.**

[Cite as *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 23063.

Decided Aug. 30, 2006.

Todd L. Willis and Mark C. Willis, for appellees.

Kenneth B. Baker and Harold M. Schwarz III, for appellant.

WHITMORE, Judge.

{¶ 1} Defendant-appellant, Ohio State OSW, Inc., d.b.a. Ohio State Waterproofing et al. ("OSW"), has appealed from the judgment of the Summit County Court

of Common Pleas that denied its motion to dismiss or to stay proceedings and compel arbitration. This court reverses.

I

{¶ 2} On May 4, 2005, plaintiffs-appellees, Billie and Douglas Ball, filed an action against defendant-appellant OSW for fraud, breach of contract, breach of warranties, and violations of the Ohio Consumer Sales Practices Act and the Magnuson–Moss Warranty Act. On June 15, 2005, OSW filed an answer and a motion to dismiss or to stay proceedings and compel arbitration. OSW's motion was based upon an arbitration provision included in the parties' contract. Appellees opposed OSW's motion based on the procedural and substantive unconscionability of the arbitration provision. A hearing was held on December 5, 2005. On December 29, 2005, the trial court denied OSW's motion.

{¶ 3} OSW has timely appealed, asserting two assignments of error. We will address the assignments of error out of order to facilitate our review.

II

Assignment of Error Number Two

The trial court erred by finding the agreement both procedurally and substantively unconscionable as to the arbitration provision.

{¶ 4} In its second assignment of error, OSW argues that the trial court erred in finding that the arbitration provision was substantively and procedurally unconscionable. Specifically, OSW argues that the arbitration provision was not outrageous, that it was fair and commercially reasonable, and that there was no imbalance of bargaining power. We agree.

{¶ 5} Generally, we review a trial court's disposition of a motion to stay trial pending arbitration under an abuse-of-discretion standard. *Porpora v. Gatliff Bldg. Co.*, 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, at ¶ 5, citing *Reynolds v. Lapos Constr., Inc.* (May 30, 2001), 9th Dist. No. 01CA007780, 2001 WL 577665. However, the unconscionability of a contract is purely a question of law. *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841, at ¶ 12; *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 13. Therefore, we review the trial court's determination of unconscionability de novo. *Featherstone* at ¶ 12, citing *Eagle* at ¶ 13. Under the de novo standard of review, this court gives no deference to the determinations of the trial court. *Eagle* at ¶ 11. Additionally, "[a] determination of unconscionability is a fact-sensitive question that requires a case-by-case review of the surrounding circumstances." *Featherstone* at ¶ 12, citing *Eagle* at ¶ 13.

{¶ 6} Public policy in Ohio favors arbitration as a means to settle disputes. *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 711–712, 590 N.E.2d 1242; *Porpora,* 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, at ¶ 6; *Eagle,* 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d. 1161, at ¶ 14. Accordingly, arbitration provisions are generally valid and enforceable pursuant to R.C. 2711.01(A). In fact, when examining an arbitration clause, a court must "bear in mind the strong presumption in favor of arbitrability and resolve all doubts in favor of arbitrability." *Neubrander v. Dean Witter Reynolds, Inc.* (1992), 81 Ohio App.3d 308, 311, 610 N.E.2d 1089. However, an arbitration provision may be held unenforceable under the statute on "grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). One of those grounds is unconscionability. *Porpora* at ¶ 6; *Eagle* at ¶ 29. A party seeking to invalidate an arbitration clause on grounds of unconscionability must establish that the provision is both procedurally and substantively unconscionable. *Porpora* at ¶ 6; *Eagle* at ¶ 30, citing *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294.

{¶ 7} "Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible." *Porpora,* 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, at ¶ 7, citing *Bushman v. MFC Drilling, Inc.* (July 19, 1995), 9th Dist. No. 2403–M, 1995 WL 434409. This court has held that when determining procedural unconscionability, a reviewing court must consider factors bearing directly on the relative bargaining position of the parties. *Porpora* at ¶ 7; *Featherstone,* 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841, at ¶ 13; *Eagle* at ¶ 31. Such factors include " 'age, education, intelligence, business acumen, experience in similar transactions, whether terms were explained to the weaker party, and who drafted the contract.' " *Featherstone* at ¶ 13, quoting *Eagle* at ¶ 31. Substantive unconscionability goes to the terms of contract themselves. See *Porpora* at ¶ 8; *Eagle* at ¶ 31. Contractual terms are substantively unconscionable if they are unfair and commercially unreasonable. *Porpora* at ¶ 8, citing *Bank One, N.A. v. Borovitz,* 9th Dist. No. 21042, 2002-Ohio-5544, 2002 WL 31312671, at ¶ 16.

{¶ 8} Having reviewed the applicable law, we turn our attention to the arbitration provision at issue and the circumstances surrounding the signing of the contract containing the provision.

### Procedural Unconscionability

{¶ 9} This court finds that appellees were in a sound bargaining position when they signed the contract that contained the arbitration provision. Each

appellee has a postsecondary education.[1]  There is nothing in the record to indicate advanced age, infirmity, or incompetence to contract.  While appellees have asserted that neither had been a party to a home-improvement contract before, they did have previous experience concerning sizable financial transactions—e.g., their home mortgage.  While the evidence is contradictory regarding the level of detail with which OSW's representative, Michael Sarris, explained the terms, it is uncontroverted that he did, in fact, review the contract with appellees.  Regardless, "the Ohio Supreme Court held that there is no requirement that an arbitration clause be explained orally to a party prior to signing when the provisions at issue were not in fine print, were not hidden from the party, were part of an industry standard and were not misrepresented to the signatory." *English v. Cornwell Quality Tools Co., Inc.*, 9th Dist. No. 22578, 2005-Ohio-6983, 2005 WL 3556281, at ¶ 22, citing *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 503, 692 N.E.2d 574.  In this case, the arbitration provision is not hidden and is in the same size font as the rest of the contract, and there is no evidence of misrepresentation.

{¶ 10} Further, while appellees were not represented by counsel, it was by their own choice, and lack of representation is not dispositive.  See *Broughsville v. OHECC, L.L.C.*, 9th Dist. No. 05CA008672, 2005-Ohio-6733, 2005 WL 3483777, at ¶ 23.  Moreover, assuming arguendo that Sarris did not review and that appellees did not understand the provisions of the contract, nothing precluded appellees from seeking out legal counsel prior to signing.  See *English*, 2005-Ohio-6983, 2005 WL 3556281, at ¶ 22.  Appellees were sophisticated enough to appreciate the possibility of retaining counsel.  Appellee Billie Ball testified that they could have had an attorney review the contract prior to signing but chose not to because they did not feel one was necessary.

{¶ 11} Most notably, appellee Douglas Ball testified that he had signed the contract without fully reading it.  Douglas also testified that he generally does not read contractual provisions prior to signing and that he chose not to read them in the instant matter.  This court has followed "the well-settled principle that a person who is competent to contract and who signs a written document without reading it is bound by its terms and cannot avoid its consequences." *English*, 2005-Ohio-6983, 2005 WL 3556281, at ¶ 24, citing *Hook v. Hook* (1982), 69 Ohio St.2d 234, 238, 23 O.O.3d 239, 431 N.E.2d 667.  According to the Ohio Supreme Court, the "legal and common-sensical axiom that one must read what one signs survives" to this day. *ABM Farms*, 81 Ohio St.3d at 503, 692 N.E.2d 574.  See, also, *McAdams v. McAdams* (1909), 80 Ohio St. 232, 240–

---

1.  Appellee Billie Ball earned an associate's degree in computer science from Southern Ohio College and appellee Douglas Ball earned an associate's degree in environmental technology from Cleveland West Side Institute of Technology.

241, 88 N.E. 542 ("A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed.").

{¶ 12} Douglas did not question the meaning of the arbitration provision yet signed the contract nonetheless. Douglas initialed the space on the document specifically attesting that he had read the back side of the contract, including the arbitration provision. Douglas testified that he had an opportunity to read the terms and the conditions on the back of the contract and that he recalled looking at them prior to initialing the front. This court concludes that "[a] contracting party is presumed to know the reasonable import of the contents of a signed agreement, including the existence and scope of an arbitration clause." *Garcia v. Wayne Homes, L.L.C.* (2002), 2d Dist. No. 2001 CA 53, 2002 WL 628619 at *11.

{¶ 13} Appellees argue that the instant matter falls squarely within the purview of our previous decisions in *Porpora,* 160 Ohio App.3d 843, 2005-Ohio-2410, and *Eagle,* 157 Ohio App.3d 150, 2004-Ohio-829. We disagree and conclude that the present case is factually distinguishable from both *Eagle* and *Porpora. Eagle* involved a low-income single mother, with limited educational experience, who entered into a consumer transaction to purchase an automobile from a dealership and was subsequently required to purchase a replacement vehicle because of the initial vehicle's defects. Eagle had never purchased a vehicle before, and based on her age, sophistication, and experience, we found that it was unlikely that she had sufficient knowledge of such transactions or an awareness of her consumer rights. *Eagle* at ¶ 59. Further, we found that Eagle was rushed through the signing process, that terms were not explained to her, and that she did not receive a copy of the contract to review after the fact.

{¶ 14} In *Porpora,* the president of Gatliff Building Company testified that he would not enter into a contract with a consumer who was unwilling to accept the arbitration provision. Further, he testified that he had not explained the arbitration clause to the consumer or even called attention to it.

{¶ 15} *Eagle* and *Porpora* are inapposite to the matter sub judice. The record before us is clear that appellees were educated and experienced with signing contracts. Further, Sarris reviewed the contract with appellees prior to signing, and appellees maintained a copy of the contract. Specifically, Sarris testified that he spends an average of an hour or more going over the paperwork with the consumer. Contrary to the hard-line stance taken by the builder in *Porpora,* Sarris testified that although he lacked the authority to alter the terms of the contract, he was willing to take any request to remove the arbitration provision to his superiors. Further, while appellees have attacked Sarris's testimony as conjecture, there is nothing in the record to demonstrate that they ever ques-

tioned the language of the contract or requested to have any portion of the contract excised.

{¶ 16} The most substantial disparity between the instant case and our decisions in *Eagle* and *Porpora* is that this case does not involve a consumer transaction for a necessity, such as a house or vehicle. See *English*, 2005-Ohio-6983, 2005 WL 3556281, at ¶ 28. The facts of this case simply do not indicate the need for haste in signing the contract. While appellees have suggested that the mold in their basement presented an immediate health concern, there is nothing in the record to substantiate that claim. The record indicates that appellees intended to eliminate the mold in their basement because their son was using it as a bedroom. There is no evidence in the record to indicate that appellees lacked reasonable alternatives to accomplish this goal short of signing the contract the same day it was presented to them by OSW. To the contrary, Billie testified that she had solicited information from at least one other waterproofing company at the home and garden show.

{¶ 17} Based on the foregoing, this court cannot conclude that there was "no voluntary meeting of the minds" in the instant matter. *Porpora*, 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, at ¶ 7. Accordingly, we cannot find that the arbitration provision was procedurally unconscionable.

### Substantive Unconscionability

{¶ 18} As discussed above, in order to be deemed unconscionable, an arbitration clause must be both procedurally and substantively unconscionable. See *Porpora*, id. at ¶ 6; *Eagle*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 30, citing *Collins*, 86 Ohio App.3d at 834, 621 N.E.2d 1294. Because this court has failed to find the arbitration provision at issue to be procedurally unconscionable, it is unnecessary for us to review whether the clause is substantively unconscionable.

### Conclusion

{¶ 19} This court finds that the arbitration provision at issue is not unconscionable because it is not procedurally unconscionable. Accordingly, the trial court erred in finding it to be so.

{¶ 20} OSW's second assignment of error has merit.

### Assignment of Error Number One

The trial court erred by finding the contract adhesive in nature and not the product of a mutual agreement, freely made.

{¶ 21} This court need not address assignments of error that have been made moot by a ruling on another assignment of error. App.R. 12(A)(1)(c). Given our

disposition of OSW's second assignment of error, we decline to address the remaining assignment of error. See *State v. McCarley*, 9th Dist. No. 22562, 2006-Ohio-1176, 2006 WL 625968, at ¶ 20.

## III

{¶ 22} OSW's second assignment of error is sustained. This court declines to review OSW's first assignment of error. See App.R. 12(A)(1)(c). The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

SLABY, P.J., and BOYLE, J., concur.