[Cite as *Bachrach v. Cornwell Quality Tool Co.*, 2011-Ohio-2498.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| DAVID BACHRACH, et al. | | C.A. No. 25444 |
| Appellees | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CORNWELL QUALITY TOOL CO. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CV 2010 01 0543 |

DECISION AND JOURNAL ENTRY

Dated: May 25, 2011

DICKINSON, Judge.

INTRODUCTION

{¶1} Eight former Cornwell tool dealers, including David Bachrach, sued Cornwell Quality Tools Company for compensatory and punitive damages, alleging common law deceptive trade practices, violation of Ohio's Business Opportunity Law, fraud, fraud in the inducement, consumer fraud, negligent misrepresentation, and breach of fiduciary duty. The former franchisees brought class action claims in Summit County Common Pleas Court as representatives of a proposed class of nearly 500. In response, Cornwell filed a motion to stay pending arbitration. The trial court denied the stay and scheduled a pretrial. Cornwell appealed, arguing that the trial court incorrectly denied the stay because the question should have been referred to an arbitrator, that decisions of the United States Supreme Court and Ohio Supreme Court require arbitration under the parties' contract, and that the trial court incorrectly ruled on

the motion to stay without gathering additional evidence. This Court reverses and remands because the plaintiffs' claims fall within the scope of the parties' arbitration agreement.

BACKGROUND

{¶2} In their complaint, the plaintiffs alleged that all proposed class members had entered into similar franchising agreements with Cornwell to purchase its tools and sell them to customers. There is no dispute that the relevant agreements contain identical arbitration provisions: "Any claim or controversy in connection with, arising out of, or relating to the Agreement between Dealer and Cornwell shall be settled by binding arbitration in accordance with the rules pertaining to commercial dispute arbitration then existing with the American Arbitration Association. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. Such arbitration shall take place in such locations as the parties mutually agree, and in the absence of such agreement, in Akron, Ohio. The laws applicable to the arbitration procedure shall be the laws of the State of Ohio. The award of the arbitrator(s) shall be the sole remedy between the parties regarding any claims, counterclaims, issues presented or pled to the arbitrator(s)."

{¶3} In February 2010, Cornwell filed a motion to stay proceedings pending arbitration. Mr. Bachrach and the other plaintiffs responded in opposition and suggested that a case then pending in the United States Supreme Court would likely shape the trial court's decision. Cornwell agreed with the plaintiffs on that point, and the trial court stayed proceedings pending a ruling in *Stolt-Nielsen S.A. v. AnimalFeeds International Corporation*, ___ U.S. ___, 130 S. Ct. 1758 (2010). After that decision was released on April 27, 2010, the trial court reactivated this matter and allowed the parties to brief the impact of the United State Supreme Court's decision on the issues before it. The parties agreed that *Stolt-Nielsen* should control the

trial court's ruling, but disagreed on the proper interpretation of the decision. Based on its review of the record, the briefing, and the *Stolt-Nielsen* decision, the trial court denied Cornwell's motion for a stay and scheduled a pre-trial hearing.

## APPLICABLE LAW

{¶4} The Federal Arbitration Act, codified at chapter nine of the United States Code, "supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)). "In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Southland Corp.*, 465 U.S. at 16. The Ohio Arbitration Act is substantially similar to the Federal Arbitration Act, and the policy of both is to encourage the use of arbitration. *Henderson v. Lawyers Title Ins. Corp.*, 108 Ohio St. 3d 265, 2006-Ohio-906, at ¶48 (Lanzinger, J., dissenting) (citing R.C. 2711.01 et seq.).

## WHO DECIDES?

{¶5} Cornwell's second assignment of error is that the trial court incorrectly failed to grant its stay pending arbitration to allow an arbitrator to decide in the first instance whether the parties agreed to class arbitration. In the absence of a specific agreement to the contrary, "the question of arbitrability – whether a[n] . . . agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination." *Acad. of Med. of Cincinnati v. Aetna Health Inc.*, 108 Ohio St. 3d 185, 2006-Ohio-657, at ¶12 (quoting *AT & T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Cornwell has not argued that the parties in this case specifically agreed to allow the arbitrator to determine arbitrability in

the first instance. Instead, it has made various arguments aimed at convincing this Court that arbitrability is not the relevant question.

{¶6} Cornwell claims to have cited "strong, binding precedent in support of its position that the issue of class arbitrability must be decided initially by an arbitrator." In support of that statement, it has cited *Greentree Financial Corporation v. Bazzle*, 539 U.S. 444 (2003), and *City of Fostoria v. Ohio Patrolmen's Benevolent Association*, 106 Ohio St. 3d 194, 2005-Ohio-4558. Neither case, however, supports Cornwell's position.

{¶7} In *Bazzle*, the United States Supreme Court considered contracts between a commercial lender and its customers, each of which contained an arbitration clause providing for arbitration of all contract-related disputes. The lender argued that the arbitration clause forbade class arbitration, while the customers argued that the contract was silent on that issue. The Supreme Court remanded the case for an initial determination of that question by an arbitrator. *Greentree Fin. Corp. v. Bazzle*, 539 U.S. 444, 447 (2003). A plurality determined that the Supreme Court could not decide whether the arbitration clause allowed class action arbitration, at least partially because that was something the arbitrator should decide in the first instance. *Id.* The plurality decision was delivered by Justice Breyer and joined by three others. Justice Stevens concurred in the judgment only. All other Justices dissented. Therefore, there was no majority decision in *Bazzle*. In fact, the United States Supreme Court, in *Stolt-Nielsen*, commented that "Justice Stevens concurred in the judgment [in *Bazzle*] . . . because otherwise there would have been 'no controlling judgment of the Court,' but he did not endorse the plurality's rationale." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct. 1758, 1772 (2010) (quoting *Bazzle*, 539 U.S. at 455) (Stevens, J., concurring in the judgment and dissenting in part).

{¶8} Cornwell has argued that, although the rationale of *Bazzle* is not controlling, "its judgment remanding for initial consideration of class arbitration by the arbitrator remains binding precedent[.]" It has pointed out that in *Stolt-Nielsen* the Supreme Court "found that there was no need to revisit the [*Bazzle*] question of who should [initially determine whether the contract required class arbitration] . . . and it declined to do so." Cornwell has argued that the Supreme Court's comments about *Bazzle* in *Stolt-Nielsen* support its position that this Court should rely on *Bazzle* as "binding precedent," at least on that question.

{¶9} In *Stolt-Nielsen*, however, the Court specified that the parties in that case had been "baffled" by the opinion in *Bazzle* because, for one thing, they "appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct. 1758, 1772 (2010). The Court pointed out that only the plurality in *Bazzle* had decided that question and that there was no need to revisit it in *Stolt-Nielsen* because the parties in *Stolt-Nielsen* had signed a supplemental agreement expressly assigning that question to an arbitrator. *Id.* Thus, the Supreme Court has made it clear that *Bazzle* does not control this question.

{¶10} Cornwell has also cited *City of Fostoria v. Ohio Patrolmen's Benevolent Association*, 106 Ohio St. 3d 194, 2005-Ohio-4558, in support of its proposition that "strong, binding precedent" provides that an arbitrator should initially decide whether the contract requires class arbitration. According to Cornwell, the *Fostoria* opinion indicates that "the [Ohio] Supreme Court necessarily considered the issue to be proper for the arbitrator to decide initially[.]" In *Fostoria*, the Ohio Supreme Court utilized an invited error analysis because, during the arbitration proceedings, the City had never addressed the issue of whether the contract required the parties to arbitrate a group or class grievance. *Id.* at ¶11. The Court determined

that, "[b]ased on the unique facts of this case, this record demonstrates that the parties implicitly authorized the arbitrator to resolve this case as a class grievance." *Id.* *Fostoria* addressed neither the merits of whether the contract required class arbitration nor whether the court or the arbitrator should initially make that determination. *Fostoria*, therefore, tells us nothing about the Ohio Supreme Court's position regarding whether the court or an arbitrator should initially determine whether a contract requires class arbitration.

{¶11} Based on the plurality's reasoning in *Bazzle*, Cornwell has argued that the question at hand is not substantive arbitrability, but what kind of arbitration proceeding the parties agreed to, a procedural matter, which, according to Cornwell, should be left to the arbitrator. In *Stolt-Nielsen*, a majority of the United States Supreme Court pointed out that the dissenting opinion in that case seemed to "minimize[ ] the[ ] crucial differences [between bilateral and class action arbitration proceedings] by characterizing the question . . . as being merely what 'procedural mode' was available to present [the Respondents'] claims." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct. 1758, 1776 (2010) (quoting *Id.* at 1781 (Ginsburg, J., dissenting)). The majority went on to write that, "[i]f the question were that simple, there would be no need to consider the parties' intent with respect to class arbitration. . . . But the [Federal Arbitration Act] requires more." *Id.* at 1776. Rather than seeing the question as procedural, the United States Supreme Court in *Stolt-Nielsen* saw the question as focusing on the substantive issue of "whether the parties *agreed to authorize* class arbitration." *Id.*

{¶12} In this case, in response to the complaint, Cornwell moved the trial court, under Section 2711.02(B) of the Ohio Revised Code, for a stay pending arbitration. Section 2711.02(B) provides that, "[i]f any action is brought upon any issue referable to arbitration under

an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration . . . has been had in accordance with the agreement[.]" Thus, the applicable statute requires the trial court to analyze the contract language to determine whether the dispute falls within the scope of the arbitration agreement. Absent a specific agreement to the contrary, "the question of arbitrability . . . is undeniably an issue for judicial determination." *Acad. of Med. of Cincinnati v. Aetna Health Inc.*, 108 Ohio St. 3d 185, 2006-Ohio-657, at ¶12 (quoting *AT & T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

{¶13} Both parties and the trial court in this case relied on *Stolt-Nielsen*, but the question in that case was whether the arbitration agreement authorized class arbitration, as opposed to only individual arbitration, of claims that the parties agreed must be arbitrated under their contract. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct. 1758, 1765 (2010). In this case, the question comes one step before that. Given the procedural posture of this case, the question is whether the plaintiffs' claims fall within the scope of the arbitration agreement. The question presented in this case is not merely a procedural matter to be determined by the arbitrator. In order to determine whether Cornwell's stay pending arbitration should have been granted, the trial court had a duty to first determine whether "the issue involved in the action is referable to arbitration" under the contract. R.C. 2711.02(B). In other words, the trial court had to decide whether the plaintiffs' claims fall within the scope of the parties' arbitration agreement, without regard to their class action allegations. Cornwell's second assignment of error is overruled because it was the trial court's duty to determine the arbitrability of the dispute in the first instance.

ARBITRABILITY

{¶14} Cornwell's first assignment of error is that the trial court incorrectly denied its motion to stay pending arbitration because the plaintiffs should not be permitted to avoid the effect of a valid arbitration agreement simply by framing their claims as a class action. First, it has argued that, because this Court has previously determined that the same arbitration clause at issue in this case is enforceable, litigation was not available to Mr. Bachrach and the other plaintiffs in view of Cornwell's arbitration demand. See *English v. Cornwell Quality Tools Co*., 9th Dist. No. 22578, 2005-Ohio-6983.

{¶15} In *English*, this Court determined that the arbitration clause in Cornwell's franchise agreement was neither substantively nor procedurally unconscionable. *English v. Cornwell Quality Tools Co*., 9th Dist. No. 22578, 2005-Ohio-6983, at ¶26. Cornwell seems to have confused the concept of enforceability of an arbitration clause with arbitrability of a given dispute under that clause. As neither party has attacked the enforceability of the clause in this case, this Court will assume, without deciding, that it is enforceable. The question for this Court, however, is arbitrability, that is, whether the contract creates a duty for the parties to arbitrate this particular dispute under this apparently enforceable arbitration clause. See *Acad. of Med. of Cincinnati v. Aetna Health Inc.*, 108 Ohio St. 3d 185, 2006-Ohio-657, at ¶12 (quoting *AT & T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

{¶16} Cornwell has also argued that the trial court was required to grant its request for a stay pending arbitration based on the United States Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds International Corporation*, ___ U.S. ___, 130 S. Ct. 1758 (2010). Cornwell has argued that this case "is exactly analogous to *Stolt-Nielsen*" based on procedural history and, therefore, the parties here must be required to pursue their claims in arbitration. *Stolt-Nielsen*,

however, is factually distinguishable from this case because, in *Stolt-Nielsen*, the parties agreed that their antitrust dispute would be arbitrated. Neither party sought litigation as opposed to arbitration. The only question presented in *Stolt-Nielsen* was "whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act[.]" *Id.* at 1764. The Court held that a party may not be compelled under the Federal Arbitration Act to submit to class arbitration unless there is "a contractual basis for concluding that the party *agreed* to do so." *Id.* at 1775. The Court determined that "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that . . . may [be] infer[red] solely from the fact of the parties' agreement to arbitrate." *Id.* The Court based this determination on the fact that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id.*

{¶17} According to the plaintiffs in this matter, the holding in *Stolt-Nielsen* was that, absent an intention to arbitrate claims pleaded as a class action, parties could not be forced to arbitrate such claims. That, however, was not the holding in that case, as that question was not presented by the facts. The holding in *Stolt-Nielsen* was that parties could not be forced to arbitrate, in a class format, claims pleaded as a class action, as opposed to arbitrating each claim individually, absent some contractual evidence of an agreement to arbitrate claims in a class format. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct. 1758, 1775 (2010). The distinction is important. The Supreme Court did not decide in *Stolt-Nielsen* whether claims pleaded as a class action could be arbitrated under the agreement. The parties had previously agreed that the claims would be arbitrated. The Court considered only whether the

contract language would require an unwilling party to submit to one type of arbitration (class) as opposed to another (individual).

**{¶18}** In this case, the trial court agreed with the plaintiffs' interpretation of *Stolt-Nielsen*, determining that "[u]nder *Stolt-Nielsen*, neither a court nor an arbitrator can presume a party's consent to class arbitration where the contract is silent on that issue." Therefore, the trial court held that it "cannot compel class arbitration in this matter as the parties' Franchise Agreement is silent on the issue of class action arbitration."

**{¶19}** For this conclusion, the trial court also relied on *Strickler v. First Ohio Banc & Lending Inc.*, 9th Dist. Nos. 08CA009416, 08CA009460, 2009-Ohio-1422. In *Strickler*, borrowers filed various class action and individual claims against their lender, First Ohio Banc, which moved for a stay of proceedings pending arbitration. The trial court denied the motion to stay because it determined that the arbitration clause did not apply to class action disputes. *Id.* at ¶4. In *Strickler*, the contract provided that "arbitration may not address any dispute on a 'class action' basis." *Id.* at ¶10. But, the clause also provided that borrowers would be forbidden to "participate as a representative or member of any class of claimants pertaining to any dispute subject to arbitration." *Id.* This Court affirmed the trial court's judgment because it determined that the clause was ambiguous and must be construed against the drafter. *Id.* at ¶13. Due to the ambiguity in the language used to address class claims, this Court held that the arbitration clause did not apply to plaintiff's class action claims. *Id.* at ¶11-12.

**{¶20}** In this case, relying in part on *Strickler*, the trial court denied Cornwell's motion to stay based on a determination that the contract language was ambiguous because it did not address class actions. The trial court construed the perceived ambiguity against Cornwell, as the drafter of the provision, and held that "the parties' Franchise Agreement does not provide for

class action arbitrations, [so] class action arbitrations cannot be compelled." *Strickler*, however, is distinguishable from this case because the arbitration clause at issue in *Strickler* expressly addressed class actions, albeit in an ambiguous manner, but the arbitration clause at issue in this case does not include any language addressing either claims pleaded as class actions or arbitration as a class.

{¶21} The United States Supreme Court's decision in *Stolt-Nielsen* is likewise inapplicable to the question presented in this matter. In *Stolt-Nielsen*, the Court considered whether the parties' contract language required an unwilling party to submit to arbitration as a class as opposed to individual arbitration. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct. 1758, 1764 (2010). The parties had agreed that the claims would not go to litigation and disputed only whether the unwilling party could be forced to submit to class arbitration instead of individual arbitration. In this case, there was no similar agreement so the trial court could not rely on *Stolt-Nielsen* to support its holding denying a motion for stay of litigation pending arbitration based on the fact that the arbitration provision is "silent on the issue of class action arbitration."

{¶22} The parties have engendered much confusion in this case by framing the issue in terms of whether the claims could be arbitrated as a class as opposed to whether claims pleaded as a class action can be arbitrated. The question of whether an unwilling party may be forced into class arbitration under this agreement is not before this Court. The question presented by the procedural posture of this case is whether the plaintiffs' claims fall within the scope of the parties' arbitration agreement. Regardless of whether multiple plaintiffs present their claims in the aggregate with class action allegations, when faced with a motion for stay pending arbitration, the first question a trial court must consider, in the absence of an enforceability

challenge, is whether the disputed actions of the defendant fall within the scope of the arbitration provision. See R.C. 2711.02(B).

**{¶23}** In Ohio, when a lawsuit is filed and the defendant moves for a stay of litigation pending arbitration, the trial court must assess the arbitrability of the dispute and cannot grant the stay unless it is satisfied that the issue involved is "referable to arbitration" under the language of the contract. R.C. 2711.02(B). The Ohio Supreme Court has held that, in deciding whether a cause of action is within the scope of a given arbitration clause, courts may "ask if an action could be maintained without reference to the contract or relationship at issue." *Acad. of Med. of Cincinnati v. Aetna Health Inc.*, 108 Ohio St. 3d 185, 2006-Ohio-657, at ¶24 (quoting *Fazio v. Lehman Bros. Inc.*, 340 F.3d 386, 395 (6th Cir. 2003)). "If it could, it is likely outside the scope of the arbitration agreement." *Fazio*, 340 F.3d at 395.

**{¶24}** The arbitration provision in this case requires that "[a]ny claim or controversy in connection with, arising out of, or relating to the Agreement between Dealer and Cornwell shall be settled by binding arbitration in accordance with the rules pertaining to commercial dispute arbitration then existing with the American Arbitration Association." The Ohio Supreme Court has held that "the phrase 'any claim or controversy arising out of the agreement' is the paradigm of a broad clause. [Such an] agreement must be enforced unless 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Alexander v. Wells Fargo Fin. Ohio 1 Inc.*, 122 Ohio St. 3d 341, 2009-Ohio-2962, at ¶13 (quoting *Acad. of Med. of Cincinnati v. Aetna Health Inc.*, 108 Ohio St. 3d 185, 2006-Ohio-657, at ¶18).

**{¶25}** The contract at issue in this case required the trial court to consider whether the claim or controversy was connected with, arose out of, or was related to the agreement. The

plaintiffs have alleged that: (1) Cornwell's trade practice is to draw the plaintiffs and others into Cornwell's sham enterprise; (2) in the sale of a business opportunity to plaintiffs and others, Cornwell has not acted in conformity with the Business Opportunity Laws of Ohio; (3) Cornwell committed fraud and fraud in the inducement in obtaining the franchise agreements from plaintiffs and others through material misrepresentations designed to greatly distort the risk involved in the franchise; (4) Cornwell committed consumer fraud in connection with the sale of services; (5) Cornwell negligently misrepresented facts regarding the likelihood of success of the franchise to the damage of plaintiffs and others; (6) Cornwell breached its fiduciary duty to its franchisees; and (7) Cornwell acted with reckless disregard of its franchisees' rights and well being. All of these claims stem from the formation of the contract and the contractual relationship whereby plaintiffs became franchisees of Cornwell. Therefore, in order to prevail, the plaintiffs would have to refer to the franchise agreement and the process of creating that agreement. As the action cannot be maintained without reference to the contract between the parties, it falls within the broad scope of the arbitration agreement. See *Acad. of Med. of Cincinnati v. Aetna Health Inc.*, 108 Ohio St. 3d 185, 2006-Ohio-657, at ¶24 (quoting *Fazio v. Lehman Bros. Inc.*, 340 F.3d 386, 395 (6th Cir. 2003)). Thus, the trial court should have granted Cornwell's motion to stay litigation pending arbitration of the dispute. Cornwell's first assignment of error is sustained.

## THE RECORD

{¶26} Cornwell's third assignment of error is that the trial court incorrectly ruled on the motion for stay pending arbitration based on an incomplete record. This Court has determined, in response to assignment of error number one, that the trial court should have granted

Cornwell's motion to stay pending arbitration. Thus, this assignment of error is moot and is overruled on that basis.

## CONCLUSION

**{¶27}** Cornwell's second assignment of error is overruled because, under the circumstances of this case, arbitrability of the dispute is a question for the court, rather than the arbitrator. Its first assignment of error is sustained because the plaintiffs' claims fall within the scope of the parties' arbitration agreement. The third assignment of error is overruled as moot based on this Court's analysis of the first assignment of error. The judgment of the Summit County Common Pleas Court is reversed, and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, J.
CONCURS

CARR, P. J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶28} If the trial court has not made the initial determination regarding arbitrability and the parties have not conceded the arbitrability of the individual claims, then I would send the matter back to the trial court to make the initial determination on that issue. See *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, ¶16 (stating that the trial court must make a determination with respect to the arbitrability of an action under R.C. 2711.02). By determining an issue for the first time on appeal, this Court effectively forecloses the opportunity for appellate review for the losing party. *Hackett v. T.J. Maxx*, 9th Dist. No. 24978, 2010-Ohio-5824, at ¶25 (Carr, J., dissenting); *Schaffer v. FirstMerit Bank, N.A.*, 186 Ohio App.3d 173, 2009-Ohio-6146, at ¶34 (Carr, J., concurring, in part, and dissenting, in part).

APPEARANCES:

ROBERT M. GIPPIN, Attorney at Law, for Appellant.

TIMOTHY A. SHIMKO, Attorney at Law, for Appellees.

CHARLES E. DUNLAP, Attorney at Law, for Appellees.