OPINION
{¶ 1} This is an appeal by plaintiffs-appellants, Holt Company of Ohio, HC Industries, LLC, and Holt Texas Properties, Inc., from a judgment of the Franklin County Court of Common Pleas, granting the motion of defendants-appellees, Ohio Machinery Co., and OMCO Building LLC, for an order compelling alternative dispute resolution.
 {¶ 2} Appellants formerly owned and operated various dealerships throughout Ohio that sold, leased, and maintained rental equipment, including Caterpillar heavy *Page 2 
equipment. In the fall of 2002, appellants entered into negotiations with appellees regarding the sale of appellants' business. The accounting firm of Ernst Young performed a due diligence review on behalf of appellees regarding appellants' financial and operational data, and submitted to appellees a "Financial Due Diligence Report," dated November 4, 2003.
 {¶ 3} On April 25, 2003, the parties executed an asset purchase agreement ("the agreement"), whereby appellants sold to appellees identified assets and liabilities of equipment dealerships and related operations in Ohio. Under the terms of the agreement, the purchase price for the assets was $150,486,082, subject to adjustments, including a closing date adjustment and final balance sheet adjustments.
 {¶ 4} Pursuant to Section 4.2 of the agreement, titled "Closing Date Adjustment," appellants delivered to appellees, on April 23, 2003, a schedule (the "Pre-Closing Schedule") containing the "Sellers' good faith estimate" of the closing net assets as of the closing date. A final closing statement was delivered to appellees on June 20, 2003. Section 4.4 of the agreement contained a dispute resolution provision; pursuant to Section 4.4(a), the buyers had the right to give written notice to the sellers, within 30 days after delivery of the final closing statement, "of an objection to the calculation of the Final Closing Statement and the Adjustment Amount."
 {¶ 5} On August 19, 2003, appellees sent a letter to appellants asserting objections to the final closing statement, including appellees' contention, with respect to two of the items, that the book value of appellants' inventory "was kept on methods that were not in accordance with GAAP." More specifically, appellees objected that the parts inventory submitted by appellants was overstated as a result of appellants' failure to *Page 3 
record a two percent cash discount received on the purchase of such inventory, and that appellants improperly capitalized their repair orders relating to rental inventory.
 {¶ 6} On October 31, 2003, appellants filed a complaint against appellees, seeking declaratory and injunctive relief arising out of the agreement. Appellants alleged that most of appellees' objections involved alleged breaches of representations and warranties, including an alleged failure to comply with generally accepted accounting principles ("GAAP"), as well as other allegations regarding appellants' accounting methodologies. Appellants asserted that such alleged claims were not subject to the dispute resolution and binding arbitration mechanisms set forth in Section 4.4 of the agreement, and that appellees' August 19, 2003 letter mischaracterized claims for breaches of representations and warranties as arbitrable claims regarding the final closing statement. Appellants' complaint sought declarations that: (a) appellants were not in breach of any of the representations and warranties made in the agreement; (b) appellants' accounting methodologies and practices, including the treatment of rental credits, inventory valuation calculations, and the capitalization of maintenance expense work orders, were all in accordance with GAAP procedures and/or were the subject of express or implied agreements by appellees; and that (c) items listed on the last page of Exhibit F, as well as any objections asserted or increased after the August 20, 2003 deadline, were not subject to the alternative dispute mechanisms set forth in the agreement.
 {¶ 7} On January 2, 2004, appellees filed an answer and counterclaim. In the answer, appellees admitted that "some" of their objections contained in the August 19, 2003 letter "may also implicate matters which are breaches of representations and *Page 4 
warranties" by appellants, but that such objections "were properly made to the proposed Schedule 4.1 to the Asset Purchase Agreement, as provided in paragraph 4.3 of the Asset Purchase Agreement." In the counterclaim, appellees alleged that amounts in appellants' proposed Schedule 4.1 "contained numerous errors in calculations," and numerous items reflecting that the balance sheet and inventory submitted by appellants "were not accurate and were not prepared and maintained in accordance with generally accepted accounting principles (GAAP)."
 {¶ 8} Appellants subsequently filed a motion for leave to file an amended complaint to include causes of action for fraud, negligent misrepresentation, and estoppel against appellees. The trial court granted appellants leave to file their amended complaint. Appellees filed an answer and counterclaim to the amended complaint, alleging in their counterclaim causes of action for breach of contract, breach of representations and warranties, fraud, and negligent misrepresentation. In the counterclaim, appellees alleged that the amounts in appellants' proposed Schedule 4.1 "were incorrect and constitute breaches of the Representations and Warranties made * * * in the Asset Purchase Agreement." Appellees further alleged that, due to appellants' alleged breach of representations and warranties regarding the agreement, appellants owed appellees the amount of $8,642,472.80, including $6,275,088 for overstated inventory as a result of improperly capitalizing inventory repair orders in contravention of GAAP, and $910,931 for overstated inventory as a result of failing to properly record cash discounts.
 {¶ 9} Appellees also sought declaratory and injunctive relief, including a declaratory judgment "requiring that all disputed matters regarding the Final Closing *Page 5 
Statement and Adjustment Amount be submitted to the dispute resolution procedure," as set forth in Section 4.4(a) of the agreement.
 {¶ 10} On August 29, 2005, appellees filed a motion for a preliminary injunction and an order compelling alternative dispute resolution. Appellants filed a memorandum in opposition to appellees' motion.
 {¶ 11} By decision filed October 21, 2005, the trial court held that all of the original objections brought by appellees in its August 2003 letter fell within the provisions of Section 4.4 of the agreement, and that appellees had not waived the right to arbitration by participating in the instant litigation. By entry filed November 10, 2005, the trial court granted appellees' motion to compel alternative dispute resolution, and denied appellants' request for preliminary and injunctive relief. The court thus ordered that the parties proceed with arbitration procedures, and that all claims relating to appellees' objections to the final price in the final closing statement of the agreement be stayed as subject to the arbitration procedure set forth in Section 4.4 of the agreement.
 {¶ 12} Appellants filed a timely appeal from the trial court's entry granting appellees' motion to compel arbitration. On appeal, appellants set forth the following two assignments of error for review:
 Appellant[s'] Assignment of Error No. 1
 The trial court committed reversible error in holding that claims regarding breaches of representations and warranties in the Asset Purchase Agreement ("APA") are within the scope of the limited arbitration provision.
 Appellant[s'] Assignment of Error No. 2
 The trial court committed reversible error by failing to find a waiver of arbitration where the defendants: (1) failed to raise *Page 6 
arbitration as an affirmative defense; (2) asserted substantive counterclaims; (3) actively engaged in litigation for more than two years, including taking and defending more than eighteen depositions and serving seven rounds of written discovery and responding to three rounds of written discovery; and (4) waited to file a motion to compel arbitration until twenty-two months after the filing of the lawsuit — eight weeks before trial, and failed to file a motion to stay proceedings pending arbitration.
 {¶ 13} Under its first assignment of error, appellants contend that the trial court misinterpreted the dispute resolution provisions of the agreement. More specifically, appellants assert they did not agree to submit claims alleging breaches of representations and warranties to arbitration, and that the court erred in treating the arbitration provisions as unlimited in scope.
 {¶ 14} In general, when reviewing whether a trial court has properly granted or denied a motion to stay proceedings and compel arbitration, the standard of review is abuse of discretion. Tinker v. Oldaker, Franklin App. No. 03AP-671, 2004-Ohio-3316, at ¶ 18. Interpreting the meaning and construction of contracts, however, requires an appellate court to review questions of law de novo. West v. Household Life Ins.Co., Franklin App. No. 06AP-906, 2007-Ohio-845, at ¶ 7.
 {¶ 15} Ohio public policy favors arbitration as a means to settle disputes. Ball v. Ohio State Home Servs., Inc., 168 Ohio App.3d 622,2006-Ohio-4464, at ¶ 6. Thus, there exists a strong presumption in favor of arbitration. Ignazio v. Clear Channel Broadcasting, Inc.,113 Ohio St.3d 276, 2007-Ohio-1947, at ¶ 18. Despite the general policy favoring arbitration, this policy will be denied in instances where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the *Page 7 
asserted dispute." Gibbons-Grable Co. v. Gilbane Bldg. Co. (1986),34 Ohio App.3d 170, 173.
 {¶ 16} Under Ohio law, "`[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.'" Leber v. Smith (1994), 70 Ohio St.3d 548, 557, quoting Inland Refuse Transfer Co. v. Browning-Ferris Industries ofOhio, Inc. (1984), 15 Ohio St.3d 321, 322. Further, "courts have `an obligation to give plain language its ordinary meaning and to refrain from rewriting the contractual agreement of the parties.'"Leber, supra, at 557, quoting Miller v. Marrocco (1986),28 Ohio St.3d 438, 439.
 {¶ 17} In the instant case, Article IV of the agreement sets forth the terms of the price of the sale. Pursuant to Section 4.1, the buyers were to pay to sellers, "subject to the adjustments set forth herein," an aggregate purchase price of $150,486,082. Under Section 4.2, the sellers were required to deliver to buyers a schedule, "in the form of Schedule 4.1," containing the sellers' "good faith estimate of the Closing Net Assets of the Sellers as of the Closing Date." Section 4.3 addressed final balance sheet adjustments, including the provision that, "[w]ithin thirty (30) days after the Closing Date, Sellers will deliver the Final Closing Statement to Buyers." Pursuant to Section 4.3(a), based upon a determination of the final closing statement and the closing net assets, the purchase "shall be adjusted, up or down."
 {¶ 18} Section 4.4 of the agreement, titled "Dispute Resolution," states in relevant part as follows:
 * * * If within thirty (30) days after Sellers' delivery of the Final Closing Statement, Buyers have not given Sellers written notice of an objection to the calculation of the Final Closing *Page 8 
Statement and the Adjustment Amount * * *, then the Final Closing Statement, Adjustment Amount and Purchase Price calculated by Sellers shall be binding and conclusive on the Parties. In the event that Sellers receive notice of a Disputed Matter within thirty (30) days following Sellers' delivery of the Final Closing Statement, then during a period of thirty (30) days following the delivery of such notice, the Sellers and Buyers shall attempt to resolve any Disputed Matters. If, at the end of such thirty (30) day period, the Sellers and Buyers shall have failed to reach agreement with respect to the Disputed Matters, the unresolved Disputed Matters shall be referred to the Independent Accountants for resolution. The Sellers and Buyers shall provide the Independent Accountants with a written statement which includes their respective calculations of the Final Closing Statement and the components thereof, in the form of Schedule 4.1, as of the Closing Date. The Independent Accountants shall be instructed to use every reasonable effort to make its determination with respect to the Disputed Matters * * * within sixty (60) days of the submission to the Independent Accountants of the Disputed Matters. The Sellers and Buyers shall each give the Independent Accountants, during normal business hours and upon reasonable request, access to all work papers and procedures used to prepare the Final Closing Statement and each of its financial employees and accountants. Except as otherwise set forth in this Section 4.5, the final determination of the Final Closing Statement and Adjustment Amount as of the Closing Date shall be the numbers set forth in the Seller[s'] Final Closing Statement as adjusted by any Disputed Matters resolved by the Parties and set forth in the Independent Accountant's Proposed Determination, if any, and shall be reflected on the Final Closing Statement (as defined below); provided, however, the above contemplated determinations shall be expressly limited to items comprising the Final Closing Statement, and no other rights or remedies provided for in this Agreement shall be affected. * * *
 * * * In the event Seller and Buyer remain in dispute as to any Disputed Matter after the Independent Accountants have rendered the Independent Accountant's Proposed Determination, such unresolved Disputed Matter shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association * * *. Either party may demand arbitration within *Page 9 
twenty (20) days following the delivery of the Independent Accountant's Proposed Determination if the dispute has not then been settled by negotiation. * * *
 {¶ 19} Article V of the agreement, titled "REPRESENTATION AND WARRANTIES OF SELLERS," contains a "Financial Information" section (Section 5.3), addressing sellers' representations regarding: (a) business financial statements; (b) the balance sheet; (c) the final closing statement; (d) the "Absence of Undisclosed Liabilities"; (e) accounts receivable; and (f) inventory. Section 5.3(c) states that the final closing statement "will be prepared on a basis consistent with the Business Financial Statements, will present fairly the financial condition and results of operations of the Business, and will be prepared in accordance with GAAP." Similarly, Section 5.3(b) contains a representation stating that the balance sheet "will be prepared in accordance with GAAP."
 {¶ 20} Article XI of the agreement provides for "INDEMNIFICATION AND PROCEDURES." Section 11.1(a) provides in part that sellers shall indemnify and hold buyers harmless from damages arising out of "the inaccuracy or breach of any representation or warranty made by any Seller in this Agreement."
 {¶ 21} Section 14.8 of the agreement provides in part that the parties "shall be entitled to an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions hereof in any action instituted in any court of the United States." Section 14.16 states as follows:
 Exclusive Jurisdiction and Consent to Service of Process. The Parties agree that any legal Action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, shall be instituted in a federal or state court sitting in Franklin County, Ohio, which shall be the *Page 10 
exclusive jurisdiction and venue of said legal proceedings, and each Party hereto waives any objection which such Party may now or hereafter have to the laying of venue of any such Action, suit or proceeding and irrevocably submits to the jurisdiction of any such court in any such Action, suit or proceeding. Any and all service of process and any other notice in any such Action, suit or proceeding shall be effective against such Party when transmitted in accordance with the notice provision herein. Nothing contained herein shall be deemed to affect the right of any Party hereto to serve process in any manner permitted by law.
 {¶ 22} As noted under the facts, in its August 19, 2003 "Notice of Objections to Schedule 4.1," appellees raised various objections, including the following:
 With respect to items 14 and 15, we have had a number of meetings with independent accountants who have determined that the book value of the Sellers'] Inventory was kept on methods that were not in accordance with GAAP. Specifically:
 Item 14 — Cash Discounts. Cash discounts received from CAT on purchases of new machinery and parts were included in Inventory. Holt's actual cost of such Inventory is therefore overstated by 2% for each item for which a discount was received.
 Item 15 — Repair Expenses. All repair expenses relating to the machinery included in the Purchased Assets were capitalized, although it would appear that nearly all of this machinery was included in Holt's rental fleet. Although these repairs were made to equipment that was out on rental, such expenses were not matched with the related rental income that generated the need for these repairs. The cost of Inventory is therefore overstated by the amounts of these capitalized repairs. The amount of our objection reflected on Exhibit A represents the total of these repairs, with the exception of any repairs in excess of $20,000. These we felt were more likely to appropriately be capitalized. It may be that some of the repair expenses which were less than this amount did extend the useful life of the equipment and we would agree to review these on a case by case basis. *Page 11 
 {¶ 23} The trial court, in analyzing the above objections and the various provisions of the agreement, held in pertinent part:
 * * * In objections 14 and 15, Ohio Machinery objects to Holt's financial practices which it alleges do not conform to GAAP. Because the objections relate to the use of GAAP in calculating the final closing statement, Holt contends that these objections are governed solely by Article V.
 Holt argues that Ohio Machinery's interpretation of the scope of the arbitration provisions would render Article V meaningless because it is so broad as to include all disputes between the parties and require arbitration of all disputes. However, many of the representations and warranties contained in Article V clearly do not implicate the arbitration provisions. * * *
 Furthermore, for disputes that implicate both the warranty provisions and the arbitration provisions, both Section 4.4 and Article V can be given effect. Based on the asset purchase agreement, any disputes regarding the calculation of the final closing statement must first utilize the arbitration provisions of Section 4.4 to determine the proper purchase price. Under Section 4.4, parties bear their respective costs and expenses incurred in establishing the proper final closing statement. For breaches of warranty or representation, however, the breaching party must pay the costs and expenses, including reasonable attorneys' fees and expenses of the non-breaching party. Article V therefore creates a separate remedy for breaches of warranty in addition to adjustments to the final closing statement and the purchase price. For disputes regarding the calculation of the final closing statement that also implicate a warranty or representation contained in Article V, the party may first resolve the calculation disputes through the provisions of Section 4.4 and then may litigate and seek payment of its costs and expenses for resolving the dispute.
 Section 4.4 applies to disputes regarding the calculation of the final closing statement. Use of the alternative dispute mechanisms contained in Section 4.4 is appropriate for all disputes that can be reflected in changes to Schedule 4.1 and the final closing statement. The use, or non-use, of GAAP in preparing the final closing statement affects the amounts *Page 12 
reflected in that statement, and ultimately affects the final purchase price to be paid by Ohio Machinery. For example, if Ohio Machinery's assertion is correct and GAAP was not followed in connection with Holt's repair expenses, the cost of inventory would be overstated in the final closing statement. Such an overstatement would affect the calculation of the final purchase price. The dispute ultimately relates to whether the calculation of the final purchase price was properly performed and Section 4.4 governs such disputes. For these reasons, the court finds that objections 14 and 15 fall within the scope of the arbitration provisions.
 Significantly, the asset purchase agreement expressly contemplates that the independent accountant will review all of the procedures used to calculate the final closing statement. Section 4.4(a) states, "The Sellers and Buyers shall each give the Independent Accountants, during normal business hours and upon reasonable request, access to all work papers and procedures used to prepare the Final Closing Statement and each of its financial employees and accountants. The provision reflects the parties' agreement that the arbitration provisions include review of the accounting procedures used to calculate the final closing statement.
(Emphasis sic; footnote omitted.)
 {¶ 24} Appellants assert that the objections submitted by appellees regarding the inventory valuations, if true, would constitute violations of Article V of the agreement, pertaining to representations and warranties of the sellers, given that appellants represented that its financial statements were prepared in accordance with GAAP under that article. Appellants maintain that the trial court erred in attempting to reconcile the dispute resolution provisions of Article IV with the provisions in Article V.
 {¶ 25} Appellants rely upon two cases, Bratt Ent, Inc. v. NobleInternatl., Ltd. (C.A.6, 2003), 338 F.3d 609, and Medcom Holding Co. v.Baxter Travenol Labs, Inc. (N.D.Ill.1988), No. 87 C 9853, in support of their contention that the trial court misapplied
the language of the arbitration provision. The decision inBratt stands for the general *Page 13 
proposition that, when an arbitration clause implicates only a specific type of dispute, a court may not require arbitration on claims not included. In Medcom, the court held that the language of an arbitration agreement did not encompass certain objections by the plaintiff to the valuation of company property, and was more properly addressed in the plaintiff's claims of fraudulent representation and breach of contract.
 {¶ 26} For purposes of the instant case, we find more helpful two decisions, Westmoreland Coal Co. v. Entech, Inc. (2003), 100 N.Y.2d 352, and OSI Systems, Inc. v. Instrumentarium Corp. (Del.Ch. 2006),892 A.2d 1086, involving purchase agreements with purchase price adjustment provisions. Under the facts of Westmoreland, the buyer, Westmoreland Coal Company ("Westmoreland"), entered into a stock purchase agreement with the seller, Entech, Inc. ("Entech"), to acquire all of Entech's coal mining subsidiaries. Under the agreement, Entech warranted that interim financial statements had been prepared in accordance with GAAP. Based upon those financial statements, the agreement "pegged" the companies' net asset value as $97,120,000 as of a certain date, and the parties agreed to a total purchase price of $138 million, subject to adjustments. Westmoreland, supra, at 355.
 {¶ 27} Entech subsequently submitted a closing date certificate, reflecting a net asset value of $107.3 million. The agreement afforded Westmoreland 30 days, following receipt of the closing date certificate, to make "an objection to a material aspect" of the certificate. Id., at 356. If the parties reached an agreement, the closing date certificate was to be amended accordingly, but any disagreements were to be submitted to an independent accountant, whose determination as to the closing date certificate was final *Page 14 
and binding on the parties. Westmoreland objected to the closing date certificate, claiming an adjustment in its favor of approximately $74 million.
 {¶ 28} Entech, however, declined to submit to alternative dispute resolution ("ADR") under the agreement's purchase price adjustment provision; rather, in Entech's view, to the extent Westmoreland objected to the asset values "for failure to comply with GAAP, consistently applied, its exclusive remedy was a lawsuit for breach of a representation or warranty in a court of competent jurisdiction, as provided for by the Agreement's indemnification provisions." Id. Specifically, under the agreement, disputes over representations and warranties were to "be resolved by litigation in a court of competent jurisdiction." Id., at 357.
 {¶ 29} Following Entech's refusal to submit to ADR, Westmoreland initiated an action, seeking to compel Entech to submit the dispute to an independent accountant for resolution. Westmoreland alleged in its petition that it believed Entech owed it a purchase price adjustment of approximately $30.3 million, and Westmoreland further asserted that "many of the items in dispute result from the fact that Entech's Closing Date Certificate and related schedules were not prepared in accordance with GAAP." Id.
 {¶ 30} The trial court granted Westmoreland's petition and ordered the parties to select a mutually acceptable independent accountant, "in conformity with the Agreement's purchase price adjustment provisions." Id. On appeal, the appellate division affirmed, finding that the purchase price adjustment provisions "unambiguously required any `material' objection to the closing date certificate to be submitted to arbitration by the independent accountant, who was `to decide whether any individual objection [was] sufficiently "material" to warrant an adjustment.'" Id. *Page 15 
 {¶ 31} On further appeal, the court in Westmoreland, supra, at 359-360, reversed, finding that Westmoreland's objections fell within the agreement's indemnification provisions, not the purchase price adjustment provisions, and holding in relevant part:
 * * * Entech specifically represented and warranted that the interim financial statements complied with GAAP. The Agreement's indemnification provisions afford a complete, comprehensive remedy for any and all claims for breach of a representation or warranty. The indemnification provisions further set out a detailed method for asserting claims for breach of a representation or warranty and require that, if negotiations fail, these claims are to be resolved exclusively by litigation. Westmoreland waives all other indemnification rights and claims. Thus, Westmoreland's interpretation of the purchase price adjustment provisions to provide a remedy for breach of a representation or warranty — which is exactly what Westmoreland asserts when it objects to an asset value on the closing date certificate for failure to comply with GAAP, consistently applied — would subvert this "exclusive remedies" limitation and waiver * * * *
 * * * Westmoreland has interposed objections that, if fully credited by an independent accountant in a streamlined ADR proceeding, would reduce the purchase price by roughly 22% on the basis of objections to the transaction's underlying accounting fundamentals. As a matter of due diligence, Westmoreland knew about (or certainly had the opportunity to learn) the accounting methodologies employed by Entech before agreeing to acquire the Companies. These sophisticated commercial parties surely could not have intended to consign a significant portion of the purchase price to ADR, and, in fact, they did not: Westmoreland's objections related to noncompliance with GAAP are, in fact, claims for breach of a representation or warranty. These claims may only be pursued in a court of law, with its attendant protections of discovery, rules of evidence, burden of proof, and full appellate review. *
(Emphasis sic.)
 {¶ 32} In OSI Systems, supra, the issue before the court was which of two types of arbitration should be used in resolving the parties' dispute over the closing adjustment in *Page 16 
the purchase price of a business. The plaintiff-buyer, OSI Systems, Inc. ("OSI"), filed suit against defendant-seller, Instrumentarium Corporation ("Instrumentarium"), demanding that Instrumentarium engage in "Closing Adjustment Arbitration," to be conducted before an independent accounting firm. OSI's claims rested primarily on the contention that Instrumentarium premised its financial statements and estimates of working capital of the business on accounting judgments that violated generally accepted accounting principles. OSISystems, supra, at 1090.
 {¶ 33} The purchase agreement contained a provision regarding the calculation, by the seller, of the final purchase price, including a "Closing Adjustment" calculation, driven by a comparison of the company's modified working capital as of June 30, 2003, and a final modified working capital statement as of the closing date. Id., at 1087. The agreement also gave the buyer the right to prepare its own estimates pertaining to the closing adjustment. Any differences between the parties were to be submitted to "an independent certified public accounting firm." Id., at 1088. OSI estimated that the company's modified working capital as of the closing date was $54.361 million, thus entitling it to a downward closing adjustment of approximately $25 million. In arriving at that figure, OSI altered many of the accounting principles used by Instrumentarium, based upon OSI's contention that the principles employed by Instrumentarium "were not compliant with generally accepted accounting principles," as required under the purchase agreements definition of "Transaction Accounting Principles." Id., at 1089.
 {¶ 34} Because of OSI's decision to use different accounting principles, Instrumentarium refused to engage in closing adjustment arbitration, asserting that OSI was not merely arguing about a difference of opinion regarding the change in working *Page 17 
capital between June 30, 2003, and the closing date; rather, Instrumentarium argued, OSI was alleging that the statement of working capital prepared by Instrumentarium did not comply with GAAP, i.e., "from a fundamental alteration in accounting principles." Id. Further, Instrumentarium argued that OSI's claim that the working capital did not comply with GAAP in the first instance was one for breach of a representation and warranty governed by a contractual indemnity provision in the agreement requiring arbitration before a "law-trained arbitrator ('Legal Arbitration')," as opposed to the narrower form of arbitration before an accounting firm. Id.
 {¶ 35} In light of Instrumentarium's refusal to engage in "Closing Adjustment Arbitration," OSI filed its action to resolve the parties' differences regarding the closing adjustment. In its counterclaim, Instrumentarium argued, as indicated above, that OSI was required to raise any contention that the accounting principles used in preparing the statement at issue were not in compliance with GAAP under Legal Arbitration.
 {¶ 36} In OSI Systems, the court found in favor of Instrumentarium, holding that any argument by OSI that the accounting principles used in the reference statement did not comply with GAAP should be resolved by the Legal Arbitration process (rather than through Closing Adjustment Arbitration). The court noted in its decision that the agreement specifically provided that representation and warranties regarding the financial statements, including the Reference Statement, survived the closing. The court found significant the fact that OSI "bargained to have the Reference Statement's material accuracy and compliance with GAAP represented and warranted." Id., at 1093. The court noted, "to the extent that OSI is contending that the Reference Statement was materially inaccurate because it was premised on accounting principles that do not *Page 18 
comply with GAAP, it is also simultaneously arguing that the Financial Statements also violated GAAP, and that Instrumentarium breached [such warranty and representation]."
 {¶ 37} The court in OSI Systems, supra, at 1094-1095, further held in relevant part:
 As Instrumentarium points out, OSI is seeking a Closing Adjustment that will reduce the purchase price from the $46.641 million paid at Closing to less than $21.294 million, a reduction of approximately 54%. The way that OSI seeks to obtain that drastic reduction is by funneling its contention that Instrumentarium's Financial Statements and Reference Statement were materially misleading and violative of GAAP into the narrower Closing Adjustment Arbitration Process. * * * OSI is seeking to end-run the contractual Indemnification process.
 If OSI wishes to claim that the Reference Statement was not materially accurate because it was not based on GAAP-compliant accounting principles, it must prove that claim in a Legal Arbitration because that was the process the parties agreed would govern claims for breach of representations and warranties. * * * OSI cannot bypass the contractual Indemnification process, ignore the contractual requirement to prepare its Initial Modified Working Capital Statement using accounting principles consistent with those used in the Reference Statement, and then seek a gigantic Closing Adjustment by attempting to convince the Independent Accounting Firm that Instrumentarium's Reference Statement was materially inaccurate and infected by improper accounting. The process set forth in * * * [the section of the agreement addressing Closing Adjustment Arbitration] was not intended to be used to resolve such contentions * * *
(Footnote omitted.)
 {¶ 38} In the present case, the objections submitted by appellees, similar to those at issue in Westmoreland and OSI Systems, alleged, in part, that "Inventory was kept on methods that were not in accordance with GAAP." Further, appellees' counterclaim alleged that appellants' failure, under GAAP, to expense the cost of repair orders, and the *Page 19 
failure to record a two percent cash discount on the purchase of parts inventory, constituted "breaches of the Representations and Warranties made by Plaintiffs in the Asset Purchase Agreement." In arguing that such methodology by appellants was not in accordance with GAAP, appellees seek approximately $9 million in adjustments.
 {¶ 39} Similar to the facts of OSI Systems, the agreement in the instant case provided for an adjustment of the purchase price, based in part upon a comparison of amounts reflected on the final closing statement with amounts as reflected on the pre-closing statement. Specifically, following a determination of the final closing statement and the closing net assets, the agreement provided that the purchase price "shall be adjusted, up or down as follows: the amount of the Closing Net Assets reflected on the Final Closing Statement shall be reduced by the amount of the Closing Net Assets as reflected on the Pre-Closing Schedule (the amount of such difference referred to as the `Adjustment Amount')." Under the dispute resolution provision, buyers had the right, within 30 days of the sellers' delivery of the final closing statement, to provide sellers with written notice of "an objection to the calculation of the Final Closing Statement and the Adjustment Amount."
 {¶ 40} As noted by appellants, the representation that the final closing statement will be "prepared in accordance with GAAP" is set forth in Article V of the agreement, addressing the sellers' representations and warranties, not under the dispute resolution provision of Section 4.4. We agree with appellants that the dispute resolution provision at issue is narrow in scope, limiting objections to matters involving the "calculation of the Final Closing Statement and the Adjustment Amount," and does not provide for the independent accountant or the arbitration procedures to resolve whether the parties *Page 20 
breached the agreement. Rather, in considering the language of the agreement, we find that the parties bargained for the right to litigate matters involving an alleged breach of warranty for failure to comply with GAAP. Here, the allegations in appellees' objections and counterclaim, asserting that the book value of the inventory was based upon methodology not in compliance with GAAP, and, therefore, a breach of representations and warranties, involve more than a mere dispute as to a calculation regarding the final closing statement and the adjustment amount. Finding that these matters fall outside the scope of the dispute resolution provisions, we agree with appellants that the trial court erred in ruling that the claims were subject to arbitration.
 {¶ 41} Accordingly, appellants' first assignment of error is sustained. Based upon this court's disposition of appellants' first assignment of error, the second assignment of error, in which appellants challenge the trial court's determination that appellees did not waive the right to arbitrate, is rendered moot.
 {¶ 42} Having sustained appellants' first assignment of error and rendering appellants' second assignment of error moot, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgment reversed and cause remanded.
 SADLER, P.J., and BRYANT, J., concur. *Page 1