[Cite as *Jacco & Assocs. Inc. v. HVAC, Inc.*, 2014-Ohio-128.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JACCO & ASSOCIATES, INC., | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| vs. | : | |
| | : | Case No. 2013 AP 03 0016 |
| HVAC, INC. | : | |
| | : | |
| Defendant-Appellant | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Court of Common Pleas,
                                Case No. 2011 CC 10 1062


JUDGMENT:                       AFFIRMED


DATE OF JUDGMENT ENTRY:         January 14, 2014


APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

MARK I. WACHTER                 MICHAEL C. JOHNSON
WACHTER KURANT                  JOHNSON, URBAN & RANGE
30195 Chagrin Boulevard         117 South Broadway
Suite 300                       Post Office Box 1007
Cleveland, Ohio  44124          New Philadelphia, Ohio  44663

*Wise, J.*

{¶1} Defendant-Appellant HVAC, Inc. appeals the decision of the Tuscarawas County Court of Common Pleas finding judgment in favor of Plaintiff-Appellee Jacco & Associates, Inc. following a bench trial on Plaintiff's breach of contract claims.

## STATEMENT OF THE FACTS AND CASE

{¶2} Appellant, HVAC, Inc. ("HVAC") is a contractor doing business as Dover-Phila Heating and Cooling, which installs and services air handling equipment. David Kinsy is the president of HVAC, Inc.

{¶3} Appellee, Jacco & Associates, Inc. ("Jacco") is a corporation whose primary business is to serve as a sales representative of air handling units such as large air-conditioning and heating equipment. The equipment is used primarily in commercial and institutional settings. (T. at 70-71). Dan Duignan is a sales representative for Jacco & Associates, Inc. Greg Drensky is vice-president of Jacco & Associates, Inc.

{¶4} According to Jacco, in a typical situation, Jacco is contacted by a design professional, usually an engineer. Jacco recommends certain equipment to be utilized in the project designed by the engineer. That equipment then becomes the "basis of design." A proposal for sale of the equipment is prepared by Jacco and the proposal is made available to all contractors who may ultimately bid on the project. (T. at 71-73).

{¶5} In 2010, Dover Chemical, a corporation located in Tuscarawas County, Ohio, planned to renovate one of its laboratories. Renovation included installation of new air handling equipment. Design of the project was handled by Josh Staley of Staley Mechanical Design Consultants. Staley worked with Jacco to prepare the specifications for the air handling equipment. The particular air handling equipment involved was

manufactured by a company which was represented by Jacco; to wit, AAON. (T. at 94-95).

**{¶6}** All interested bidders were provided with a bidding packet from Dover Chemical. The bidding packet included the proposal prepared by Jacco and included a description and price of the equipment involved.

**{¶7}** In April, 2011, HVAC was notified that it was the successful bidder on the project. HVAC, through its president, David Kinsey, notified Jacco that it was the successful bidder. Jacco's representative advised Kinsey that a purchase order was necessary in order to initiate the equipment manufacture and purchase process.

**{¶8}** On April 28, 2011, Kinsey e-mailed a purchase order to Jacco.

**{¶9}** When Kinsey requested a specific delivery date for the equipment, Jacco instead advised Kinsey of the number of weeks for typical manufacture. (T. at 42-43).

**{¶10}** On May 3, 2011, Kinsey sent an e-mail to Jacco requesting that the order be put on hold. However, after Jacco's representatives, Dan Duignan and Greg Drensky, contacted Kinsey, the order was reinstated. (T. at 27-28).

**{¶11}** According to Jacco, part of the process involved in this type of project is a final review of the configuration of the planned equipment by the project engineer. This process is known as the "submittal". While typically the contractor will handle the submittal process, Jacco handled the process in this case in order to expedite it. The approved submittal from the engineer was received on May 4, 2011. (T. at 74-77). The equipment was ordered on May 11, 2011. (T. at 78).

**{¶12}** In response to Kinsey's concerns about the delivery date of the equipment, Jacco determined that shipment could be expedited from the manufacturer,

but only at an additional cost. HVAC did not agree to pay the additional amount. (T. at 45-46).

{¶13} On June 28, 2011, HVAC canceled the contract for the equipment. (T. at 47).

{¶14} Jacco's representative, Dan Duignan, arranged a meeting with the Dover Chemical personnel responsible for the project. Kinsey did not attend the meeting. (T. at 48).

{¶15} Duignan advised the Dover Chemical representatives that he would attempt to obtain a specific delivery date for the equipment. The next day, Kinsey met with the Dover Chemical representatives and Duignan was contacted by phone. He was still unable to provide a specific date, as he had not yet heard back from the manufacturer. Kinsey claimed that he would be able to obtain replacement equipment, and the cancellation of the order from Jacco remained in place. (T. at 49-50).

{¶16} On July 6, 2011, Jacco advised Kinsey of the consequences of the cancellation. Kinsey was advised that he could either cancel the order and pay a charge of $23,000.00, or accept delivery during the week of July 10, 2011. Kinsey did not respond, and the order was canceled.

{¶17} Jacco invoiced HVAC for the cancellation charge of $23,000.00, along with the roof curb and handheld controller, parts related to the equipment, at a cost of $1,500.00.

{¶18} On October 14, 2011, Jacco & Associates, Inc. filed a Complaint alleging breach of contract by appellant, HVAC, Inc.

{¶19} A bench trial was held on July 23, 2012.

{¶20} At trial Jacco presented evidence that the bidding packet provided to HVAC, which included the proposal prepared by Jacco, also included not only a description and price of the equipment involved, but also Jacco's "Terms and Conditions of Sale". (T. at 40).

{¶21} The relevant provisions of the Terms and Conditions are as follows:

{¶22} "1. Jacco & Associates is a HVAC systems provider, temperature controls contractor, service & maintenance provider and parts distributor and is not bound to the general provisions of the plans and specifications of the buyer, in any way. Jacco & Associates sells its products and services only on the express condition that the buyer assents to the terms and conditions set forth herein.

{¶23} "3. Purchaser agrees to pay all costs of collection incurred by the company, including, but not limited to administrative charges, collection agency fees, attorney's fees, and court costs. All past due amounts shall bear interest at one and a half percent (1.5%) from the date of invoice.

{¶24} "4. Jacco & Associates does not guarantee a particular date of shipment or delivery.

{¶25} "8. Accepted orders are not subject to cancellation without Jacco & Associates and its suppliers being reimbursed for any or all expenses.

{¶26} "12. The terms and conditions stated herein constitute the full understanding between Jacco & Associates and the buyer, and no terms, conditions, understanding or agreement purporting to modify or vary these terms shall be binding unless hereafter made in writing by an official of Jacco & Associates and an authorized representative of the buyer."

**{¶27}** Evidence was presented to establish that the cost of the equipment to Jacco would have been $27,422.00 had HVAC not breached the contract. As the original contract amount was $46,100.00, Jacco's stated that its lost profit on the sale of the equipment was $18,678.00. (T. at 86-87). Additionally, Jacco paid AAON, the manufacturer of the equipment, $2,000.00 for cancellation of the order. (T. at 85). In all, Jacco claimed damages in the amount of $20,678.00. (T. at 85-87).

**{¶28}** Appellant HVAC claimed that the "Terms and Conditions" were not attached to Jacco's proposal in the bidding packet it received from Dover Chemical.

**{¶29}** The contract between the parties provided for attorney fees related to the collection of the contract balance. The parties stipulated to an appropriate amount of attorney's fees, to wit, $10,850.00. Stipulation, February 21, 2013. Final Judgment Entry, February 22, 2013.

**{¶30}** On November 26, 2012, the trial court issued a Decision and a Judgment Entry incorporating the Decision. As the issue of attorney fees had not yet been submitted, the court scheduled a subsequent hearing regarding that issue. The parties stipulated to attorney fees of $10,850.00.

**{¶31}** On February 22, 2013, final judgment was issued in the amount of $20,678.00 plus interest at the rate of 18% per annum from July 8, 2011, attorney fees in the amount of $10,850, and costs of the action.

**{¶32}** Appellant now appeals, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

**{¶33}**  "I. THE TRIAL COURT ERRED IN GRANTING JUDGMENT FOR JACCO AS THE TRIAL COURT DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.

**{¶34}** "II. THE TRIAL COURT COMMITTED ERROR IN ITS REFUSAL TO ALLOW PAROL EVIDENCE TO BE INCLUDED AS THERE WAS NO BINDING WRITTEN CONTRACT BETWEEN THE PARTIES.

**{¶35}** "III. THE TRIAL COURT COMMITTED ERROR IN FAILING TO FIND THE "TERMS AND CONDITIONS" SIGNED IN THIS MATTER TO BE UNCONSCIONABLE."

**I.**

**{¶36}** In its First Assignment of Error, Appellant argues that the trial court's finding that the bidding packet HVAC received from Dover Chemical contained Jacco's "terms and conditions" of sale was against the manifest weight of the evidence. We disagree.

**{¶37}** On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). *See also, State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d

541, 1997–Ohio–52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012–Ohio–2179.

{¶38} In its findings of fact, the trial court found:

{¶39} "8. HVAC received a bidding packet from Dover Chemical, which included a proposal from Jacco to all bidders interested in bidding on the Dover Chemical project.

{¶40} "9. The proposal included the cost to the potential bidder of $46,100.00 and the terms and conditions of the proposal. David Kinsey, president of HVAC, did not recall seeing the terms and conditions attached to Jacco's proposal. The Court concludes, by a preponderance of the evidence, that the terms and conditions were attached to the proposal."

{¶41} At trial, the court heard testimony from Dan Duignan and Greg Drensky, both of whom testified that the bid proposal sent out to all bidders contained the subject "terms and conditions". (T. at 40, 72-73). Mr. Kinsey's own testimony was uncertain as to whether he was in receipt of the "terms and conditions" prior to bidding the project. (T. at 21-22, 123).

{¶42} While there was some conflicting evidence presented at trial as to whether HVAC received the "terms and conditions" as part of the bid package, the trial court, as the trier of fact was in a better position to observe the witnesses' demeanor and weigh their credibility. The weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, syllabus 1.

{¶43} We find the trial court's decision is supported by sufficient, competent and credible evidence, and therefore is not against the manifest weight of the evidence.

**{¶44}** Appellant's First Assignment of Error is overruled.

**II.**

**{¶45}** In its Second Assignment of Error, Appellant argues the trial court erred in refusing to allow parol evidence in this matter. We disagree.

**{¶46}** Parol evidence may not be presented to contradict the terms of a written contract. However, parol evidence is admissible to fill in the missing terms of a contract. In *Williams v. Spitzer Autoworld Canton, L.L.C.* 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, the Ohio Supreme Court explained, "[t]he parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting * * * the terms of the contract with evidence of alleged or actual agreements. 'When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.' " (Citation omitted.) *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, quoting 3 Corbin, Corbin on Contracts (1960) 357, Section 573." *Williams* at paragraph 14. However, if a written contract does not contain the complete and exclusive statement of all the terms of the agreement, a factual determination of the parties' intent may be necessary to supply the missing term. *Inland Refuse Transfer Company v. Browning Ferris Industries* (1984), 15 Ohio St.3d 321, 474 N.E.2d 271. *Galmish v. Cicchini,* 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000) (citations omitted).

**{¶47}** In the instant case, the trial court found that HVAC's acceptance of the bid proposal resulted in the formation of a contract.  The court further found that contract

included the "Terms and Conditions of Sale", which provided that "[t]he terms and conditions stated hereon constitute the full understanding between Jacco & Associates and the buyer, and no terms, conditions, understanding or agreement purporting to modify or vary these terms shall be binding unless hereafter made in writing by an official of Jacco & Associates and authorized representative of the buyer." (Judgment Entry, Conclusions of Law ¶7, 11/26/2012).

{¶48} The "Terms and Conditions" contained in both the bidding packet from Dover Chemical and that signed by David Kinsey on May 18, 2011, provided that "Jacco & Associates does not guarantee a particular date of shipment or delivery."

{¶49} The court went on to find that the parties did not enter into any additional written agreements modifying the contract. The court therefore concluded that parol evidence could not be presented to support HVAC's position that the contract included a term requiring delivery occur by the end of June, 2011.

{¶50} Upon review, based on the foregoing, we find that the contract entered into by the parties in the case sub judice was a complete agreement, and the trial court therefore properly excluded parol evidence to modify the terms of such agreement.

{¶51} Appellant's Second Assignment of Error is overruled.

**III.**

{¶52} In its third assignment of error, Appellant argues that the trial court erred in failing to find that the "Terms and Conditions" contained in the contract to be unconscionable. We disagree.

{¶53} Under Ohio law, a contract clause is unconscionable where there is the absence of meaningful choice on the part of one of the parties to a contract, combined

with contract terms that are unreasonably favorable to the other party. *Collins v. Click Camera and Video, Inc.,* 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2nd Dist.1993).

**{¶54}** Unconscionability embodies two separate concepts: (1) substantive unconscionability, i.e. "those factors which relate to the contract terms themselves and whether they are commercially reasonable," and procedural unconscionability, i.e. "those factors bearing on the relative bargaining position of the contracting parties." *Id.* In *Collins,* the court explained the difference between the two concepts as follows:

**{¶55}** "Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular limitations clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability.

**{¶56}** "Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, e.g., 'age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.' " *Id.* at 834, 621 N.E.2d 1294. (Citations omitted).

**{¶57}** The issue of unconscionability is a question of law. *See Ins. Co. of North Am. v. Automatic Sprinkler Corp.,* 67 Ohio St.2d 91, 98, 423 N.E.2d 151 (1981).

**{¶58}** The "basic test of unconscionability of contract is whether under circumstances existing at the time of making of contract and in light of general commercial background and commercial needs of particular trade or case, clauses involved are so one-sided as to oppress or unfairly surprise the other party." Black's Law Dictionary (5 Ed.Rev.1979) 1367.

**{¶59}** The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *See generally Ball v. Ohio State Home Servs., Inc.,* 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, ¶ 6; *see also Click Camera,* 86 Ohio App.3d at 834, 621 N.E.2d 1294, citing White & Summers, Uniform Commercial Code (1988) 219, Section 4–7 ("One must allege and prove a 'quantum' of both prongs in order to establish that a particular contract is unconscionable").

**{¶60}** Upon review, this Court does not find the "Terms and Conditions" contained in this contract were unconscionable.  No evidence was presented that HVAC lacked meaningful choice.

**{¶61}** Further, we find no evidence to support substantive unconscionability as to the delivery date, the cancellation policy, the payment of attorney fees or the interest rate.  This contract was between corporations. HVAC's argument that Kinsey failed to pay attention to the content of the "Terms and Conditions" is unpersuasive. Furthermore, the law does not require that each aspect of a contract be explained orally prior to signing the contract. A party to a contract is responsible for reading what he signs. *ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 503, 1998–Ohio–612, 692 N.E.2d 574; *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207.

**{¶62}** Appellant's Third Assignment of Error is overruled.

**{¶63}** For the foregoing reasons, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed.

By: Wise, J.

Gwin, P.J., and

Farmer, J., concur.

JWW/d 0103