JOURNAL ENTRY AND OPINION
{¶ 1} Defendants, Southerland Custom Builders, Inc., Mark Southerland and Charles Southerland (hereafter contractors), appeal the trial court's order denying their motion to stay proceedings and refer to arbitration.
 {¶ 2} Plaintiffs, Jeremy and Cassi Handler (hereafter homeowners), entered into a construction contract with contractors for the renovation of two bathrooms inside their home. The contract included an arbitration clause clearly labeled under the heading "Arbitration of Disputes."
 {¶ 3} Thereafter homeowners, unable to resolve a dispute with contractors about the work performed, filed suit against contractors. In their complaint, homeowners asserted claims for breach of contract, violation of the Home Sales and Solicitation Act, breach of the Ohio Consumer Sales Protection Act, fraud, and breach of express warranty. Homeowners further requested a declaratory judgment that a mechanics lien, filed by contractors after the dispute with homeowners arose, was void and of no effect.
 {¶ 4} Instead of filing an answer to the complaint, contractors filed a motion to stay the litigation and enforce the arbitration agreement contained in the construction contract. In the motion, contractors argued that homeowners had agreed, pursuant to their signing of the contract, to arbitrate any disputes arising out of the interpretation, application, and performance of the contract.
 {¶ 5} In a brief filed in opposition to the motion to stay, homeowners argued that the arbitration clause was unconscionable and, therefore, unenforceable. The trial court denied the motion without a hearing and without opinion.
 {¶ 6} Contractors filed the instant appeal and present a single assignment of error for review:
THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANTS' MOTION TO ENFORCE ARBITRATION AGREEMENT AND STAY CASE.
 {¶ 7} Contractors argue that the trial court erred in denying their motion to enforce the arbitration agreement and stay the litigation because the arbitration provision included in the contract was fully enforceable. In response, homeowners argue, as they did below, that the arbitration provision was unconscionable and thus unenforceable.
 {¶ 8} "Whether an arbitration clause is unconscionable is a question of law." Olah v. Ganley Chevrolet, Inc., Cuyahoga App. No. 86132, 2006-Ohio-694, ¶ 7, citing Ins. Co. of North Am. v.Automatic Sprinkler Corp. (1981), 67 Ohio St.2d 91, 98. This court, however, is in disagreement regarding the standard of review to be applied to a trial court's denial of a motion to stay litigation and enforce an arbitration clause:
Several panels have held that questions regarding whether the parties have made an agreement to arbitrate is [sic] a question of law requiring de novo review, while others have held that the appropriate standard is whether the trial court abused its discretion in rendering its decision.
Shumaker v. Saks, Inc. (2005), 163 Ohio App.3d 173, 175,2005-Ohio-4391, ¶ 6 (citations omitted).
 {¶ 9} Regardless of the review standard we apply in the case at bar, we conclude that the trial court erred when it denied contractors' motion to stay the proceedings and refer the case to arbitration.
A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. An arbitration agreement is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the agreement, and, with limited exceptions, such an agreement is to be upheld just as any other contract.
Vanyo v. Clear Channel Worldwide, et al. (2004),156 Ohio App.3d 706, 710, 2004-Ohio-1793, ¶ 8 (citations omitted).
 {¶ 10} Under R.C. 2711.02, a trial court must stay proceedings when a party demonstrates that there is a written agreement between the parties to submit the disputed issue to arbitration. The question of the validity of an arbitration provision is governed by R.C. 2711.01(A), which, in relevant part, provides as follows:
A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, * * * or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist atlaw or in equity for the revocation of any contract.
 {¶ 11} An arbitration clause that is deemed unconscionable is unenforceable as a matter of law. Williams v. Aetna Fin. Co.
(1998), 83 Ohio St.3d 464, 471; see, also, Olah v. GanleyChevrolet, Inc., Cuyahoga App. No. 86132, 2006-Ohio-694, ¶ 10.
 {¶ 12} "Unconscionability is generally recognized as the absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." Vanyo, supra, at 711, ¶ 17, citing Collins v. Click Camera Video (1993),86 Ohio App.3d 826, 834. In Vanyo, this court further explained the analysis required under the unconscionability doctrine:
In order for a contract provision to be unconscionable, there must exist both "substantive" and "procedural" unconscionability. Substantive unconscionability exists when the contract terms are determined to be unfair and unreasonable. Procedural unconscionability, on the other hand, exists when it is determined that there was no voluntary meeting of the minds by the parties to the contract under circumstances particular to that contract. Vanyo, at 711-712, ¶ 17.
 {¶ 13} In the present case, there is nothing in the record before us to support the argument that the arbitration agreement was either substantively or procedurally unconscionable.
Substantive Unconscionability
 {¶ 14} Homeowners argue that the arbitration clause is substantively unconscionable because it is silent on the cost of arbitration. They assert that when they signed the contract they did not realize how expensive arbitration is when compared to litigating in the Common Pleas Court. According to homeowners, the initial fee for arbitration in a suit such as theirs is $750, whereas the cost of filing the complaint is only $100. The figures on comparative filing costs were undisputed below.
 {¶ 15} Addressing virtually the same argument in O'Donoghuev. Smythe, Cramer Co., Cuyahoga App. No. 80453, 2002-Ohio-3447, this court explained that
* * * an arbitration provision in a contract is not rendered unenforceable simply because the provision is silent as to costs and fails to provide protection from potentially substantial costs. (Citation omitted). * * * [T]he party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs. (Citation omitted.) The "risk" that a party will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.
Id. at ¶ 30, citing Green Tree Fin. Corporation-Alabama v.Randolph (2000), 531 U.S. 79, 92.
 {¶ 16} From the record before us, we conclude that homeowners' claim regarding the prohibitive cost of arbitration is merely speculative. In O'Donoghue v. Smythe, Cramer Co.,
supra, the court found the arbitration clause deprived the appellees of an adequate remedy because the arbitration fee would have been at least $500, whereas the limitation of liability clause limited any recovery to $265. In the case at bar, there has been no claim that the arbitration fee is greater than any potential recovery. Moreover, although homeowners provided proof that the $750 arbitration fee is greater than the $100 cost of filing a lawsuit, they provided no evidence whatsoever regarding the costs that might be incurred during arbitration or litigation.
 {¶ 17} In Eagle v. Fred Martin Motor Co. (2004),157 Ohio App.3d 150, 169-170, 2004-Ohio-829, ¶ 47, upon which homeowners exclusively rely, the Ninth Appellate District considered, in addition to the initial filing fee, the damages as well as the costs of the following: a subpoena and an estimate of the number required; each discovery order; a continuance request; a document hearing; post-hearing brief; and written findings of facts, conclusions of law or reasons for an award. In addition, the plaintiff in Eagle provided an estimate as to how much time the arbitration case required. The appellate court considered these estimates in the context of plaintiff's income, $20,000 a year, in determining that the facts before it rendered the arbitration clause substantively unconscionable. Id. at 171, ¶ 50.
 {¶ 18} In contrast, homeowners here did not provide the trial court with any detail beyond the comparative costs of the initial fees. Consequently, their assertion that the cost of arbitration is prohibitive when compared to the cost of litigating in the Common Pleas Court is purely speculative. Although the cost of arbitration may be high, so too is the cost of litigating a claim. Indeed, it is quite possible that litigation could result in substantial legal fees and costs that, in the end, exceed the cost of arbitration. See English v. Cornwall Quality ToolsCompany, Inc., Summit App. No. 22578, 2005-Ohio-6983, ¶ 17 (even when plaintiff provided specific estimates as to variouscosts associated with arbitration, the court held that, in the absence of "evidence of the expected cost differential between arbitration and litigation," the arbitration clause was enforceable).
 {¶ 19} Thus, because homeowners failed to provide any evidence, other than initial fees, that the cost of arbitration would exceed the cost of litigation, the arbitration clause cannot be said to be substantively unconscionable on the basis of cost.
Procedural Unconscionability
 {¶ 20} Homeowners further argue that, because the contract was a pre-printed document, there was no meeting of the minds about arbitration.
 {¶ 21} The fact that a contract containing a disputed arbitration clause is pre-printed does not, standing alone, demonstrate procedural unconscionability. See Eagle, supra, at 173, ¶ 56. Instead,
"[t]he crucial question is whether `each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *?'"
Vanyo, supra, at 712, ¶ 18, citing Ohio Univ. Bd. of Trs. v.Smith (1999), 132 Ohio App.3d 211.
 {¶ 22} The mere fact that bargaining power is unequal between parties, however, "is insufficient to invalidate an otherwise enforceable arbitration agreement." Vanyo, supra, at 712, ¶ 19, citing Gilmer v. Interstate/Johnson Lane Corp. (1991),500 U.S. 20, 33.
 {¶ 23} In the case at bar, the contract itself belies homeowners' claim that "there was no give and take between the parties." Though the contract may have been a pre-printed document, there was evidence that homeowners had read it and made changes. Homeowners have not asserted otherwise.
 {¶ 24} Indeed, in Article 2 of the contract, under the heading "Addendum," an entire section was deleted, accompanied by the initials "MS" and what appear to be the initials "JH," both of which ostensibly represent the respective initials of homeowners. In the same section, the words "not labor or rough" were written under the heading "Plumbing." In Article 3, under the heading "Changes in the Agreement," there is another set of handwritten notations. Where the document states, "Payment Structure of $7,046.50," the dollar amount was changed to $8,421.50. Next to that change, above the term "30%" is the handwritten figure of "$15,000.00." Homeowners did not, nor do they now, contest these handwritten alterations to the contract. Although no notations were made on the arbitration clause, the clause was neither hidden in the contract nor written in fine print. Indeed, the provision was very clearly labeled, in Article 4 of the contract, "Arbitration of Disputes."
 {¶ 25} In sum, there is ample evidence that homeowners not only read the contract, but also negotiated some of its terms. Homeowners cannot now argue that they were deprived of an opportunity to bargain about the arbitration clause or that they were at a disadvantage during the bargaining process. From the record before us, we conclude that there was a meeting of the minds about the contract and its terms. We thus reject the argument that the arbitration clause is procedurally unconscionable.
 {¶ 26} For all of the foregoing reasons, the trial court erred in denying contractors' motion to stay the litigation and refer the case to arbitration. Contractors' sole assignment of error is thus sustained, and we remand the matter to the trial court for further proceedings consistent with this opinion.
Judgment accordingly.
This cause is reversed and remanded.
It is, therefore, ordered that appellants recover of appellees their costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., Concurs.
 Dyke, P.J., Concurs in Judgment Only.