[Cite as *Zubek v. Dearborn*, 2019-Ohio-3765.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

ROBERT ZUBEK,                          :

    Plaintiff-Appellee,           :

                      No. 107833

    v.                            :

AARON DEARBORN, ET AL.,                :

    Defendants-Appellants.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 19, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-883188

---

#### *Appearances:*

Carlozzi & Associates Co., L.P.A., and Louis J. Carlozzi, *for appellee.*

Gallagher & Sharp, L.L.P., P. Kohl Schneider, and Richard C.O. Rezie, *for appellants.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendants-appellants USA Enterprises, Inc. d.b.a. USA Insulation Company, Inc., Aaron Dearborn, and Donald Depasquale appeal from the trial court's judgment denying the defendants' motion to stay proceedings pending

arbitration in connection with a complaint filed by plaintiff-appellee Robert Zubek against the defendants for the insulation work done at his home. The trial court held the arbitration agreement contained in the parties' contract is both procedurally and substantively unconscionable. After a careful review of the record and applicable law, we determine that the arbitration agreement is neither procedurally nor substantively unconscionable and therefore reverse the trial court's judgment.

**Substantive Facts and Procedural History**

{¶ 2} Zubek contracted with USA Insulation to insulate his house. He had found USA Insulation's webpage and contacted the company via email. A representative from the company, Donald Depasquale, came to Zubek's house and they discussed how to improve the insulation of the house. Depasquale prepared a contract for the project for $5,400. Zubek signed the contract, which included an arbitration agreement.

{¶ 3} Subsequently, disputes arose regarding the quality of the insulation work. USA Insulation tried to remedy the problem but to no avail. Zubek filed a complaint against the defendants, alleging breach of contract, fraud, negligence, and violations of the Ohio Consumer Sales Practices Act ("CSPA"). He alleged the insulation work caused structural damage to his house and sought $150,000 in damages. The defendants filed a motion to stay the proceedings pending arbitration pursuant to the arbitration agreement. Zubek opposed the motion, claiming the arbitration agreement was both procedurally and substantively unconscionable.

The trial court agreed and denied the motion. This appeal follows. On appeal, USA Insulation raises the following assignment of error for our review:

1. The trial court erred by denying defendant' motion to stay proceedings pending arbitration.

## Arbitration

{¶ 4} Arbitration is a favored mechanism to settle disputes. Both the Ohio General Assembly and the courts have expressed a strong public policy favoring arbitration. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15. *See also ABM Farms v. Woods*, 81 Ohio St.3d 498, 1998-Ohio-612, 692 N.E.2d 574 ("Ohio and federal courts encourage arbitration to settle disputes"). Arbitration provides the parties "'with a relatively expeditious and economical means of resolving a dispute.'" *Hayes* at ¶ 15, quoting *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712, 590 N.E.2d 1242 (1992). Accordingly, there is a presumption favoring arbitration in Ohio courts when the claim falls within the scope of an arbitration provision. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27.

{¶ 5} Arbitration is a matter of contract. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). A determination of whether a written agreement is unconscionable is an issue of law, and we review de novo. *Taylor Bldg*. at ¶ 35. Under the de novo standard of review, we afford no deference to a trial court's decision granting or denying a motion to stay pending arbitration. *Brownlee v. Cleveland Clinic Found.*,

8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, ¶ 9. The trial court's factual findings regarding the circumstances surrounding the making of the contract, however, are reviewed with deference. *Taylor Bldg.* at ¶ 38.

**Procedural and Substantive Unconscionability**

{¶ 6} The notion of unconscionability embodies two concepts: procedural unconscionability and substantive unconscionability: the former concerns "circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible"; the latter refers to "unfair and unreasonable contract terms." *Collins v. Click Camera & Video*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993). The party claiming unconscionability of an arbitration agreement bears the burden of proving that the agreement is both substantively and procedurally unconscionable. *Taylor Bldg.* at ¶ 34.

a. **Whether the Arbitration Agreement is Procedurally Unconscionable**

{¶ 7} Zubek claims the arbitration agreement is procedurally unconscionable because there was no meeting of the minds despite his signing the contract. Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' age, education, intelligence, business acumen and experience, who drafted the contract, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods at issue. *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 2. The key inquiry here concerns whether a party, considering his

education or lack of it, had a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print. *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993).

{¶ 8} These factors weigh in favor of enforcing the arbitration agreement in this case. We consider first whether the arbitration terms are hidden. The insulation contract consists of only two pages rather than a voluminous collection of papers. The first page describes the work to be performed and the contract price of $5,400. The second page of the contract is headed "USA INSULATION'S TERMS AND CONDITIONS OF SALE." It begins with a paragraph headed "CONSUMER'S RIGHT TO CANCEL," which states that the consumer has three days to cancel the contract. Below the right-to-cancel provision is the heading "TERMS AND CONDITIONS." The first paragraph of the terms and conditions is the arbitration provision. The arbitration provision was printed in the same font as the remaining terms and conditions. The word "arbitration" is set off in bold, capital letters and it is the first word under the Terms and Conditions. The key language in the arbitration agreement is underlined and also in bold letters:

> **Customer understands and agrees that, in the absence of this provision, Customer would have a right to litigate Disputes through a court and Customer has knowingly expressly waived that right and agreed to resolve any Disputes through binding arbitration in accordance with the provisions of this paragraph**.

{¶ 9} Thus, a review of the contract shows that the arbitration agreement is prominently presented rather than concealed or buried in fine print. *Taylor Bldg.*

at ¶ 46 (the arbitration clause was not unconscionable as it appeared in standard, rather than fine print and it was not hidden). *See also McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 26 (finding an arbitration agreement not procedurally unconscionable where its print was "not exceedingly small" and it contained a sentence in all capital letters stating "this contract contains a binding arbitration provision which may be enforceable by the parties").

{¶ 10} Furthermore, the circumstances surrounding the signing of the contract reflect Zubek had a reasonable opportunity to understand the terms of the contract. *Lake Ridge Academy,* 66 Ohio St.3d 376, 613 N.E.2d 183. Zubek is a Cleveland police officer. As he testified at his deposition, he had been previously involved in an arbitration proceeding with the city of Cleveland on a contract issue and he was familiar with arbitration provisions.[1] Zubek acknowledged that USA Insulation's representative asked him to read the contract before signing and he had

---

[1] At his deposition, Zubek testified as follows:

```
Q.     Have you ever been involved in an arbitration proceeding?
A.     I have.
Q.     You have?
A.     Yes.
Q.     When was that?
A.     I couldn't tell you exactly what year. It was involving police work.
Q.     Was it before or after you entered into the agreement with USA Insulation?
A.     Before.
Q.     Okay. So before entering into the agreement with USA Insulation you were
       familiar with arbitration?
A.     Yes.
Q.     Arbitration provisions?
A.     Yes.
```

the opportunity to review the contract and asked questions. When asked at the deposition whether he *did* read the contract before signing it, Zubek stated he did not read it, but only "perused" and "scanned over" it. He knew that he had three days to further review the contract and to cancel the contract. He also acknowledged that if he did not like the contract, there were many other insulation contractors available in the area. When asked to read the arbitration agreement in the contract at his deposition, he agreed the language was clear. He also acknowledged that by signing the contract, he agreed to all of the terms and conditions of the contract. Furthermore, USA Insulation representative Depasquale testified that, before any contract was signed, he would go over the customer's right to cancel and the arbitration provision with every customer, and the customer would be expected to read the remaining terms and conditions on his or her own.

{¶ 11} Therefore, Zubek's own testimony shows that he was not hurried through the signing process. He was specifically asked by USA Insulation's representative to read the contract before signing it. "One must read what one signs." *ABM Farms*, 81 Ohio St.3d at 503, 692 N.E.2d 574. "'It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.'" *Id.,* quoting *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875).

{¶ 12} Zubek argues there was no meeting of the minds because the arbitration agreement did not provide the fees associated with arbitration or the applicable arbitration rules governing the costs. The courts have rejected this claim.

*Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (an arbitration provision is not unenforceable simply because the provision is silent as to costs). *See also Khaledi v. Nickris Properties,* 6th Dist. Huron No. H-17-015, 2018-Ohio-3087, ¶ 20; and *Sikes v. Ganley Pontiac Honda, Inc.*, 8th Dist. Cuyahoga No. 82889, 2004-Ohio-155, ¶ 18.

{¶ 13} Our review of the record shows the requirement of arbitration in the instant contract was not hidden and Zubek had a reasonable opportunity to understand it. *Lake Ridge Academy,* 66 Ohio St.3d 376, 613 N.E.2d 183. In addition, although USA Insulation was the drafter of the contract, Zubek had many other insulation contractors in the area to choose from and he was free to cancel the contract within three days. Therefore, we cannot say there was an unequal bargaining power between these two parties. Even if there were some degree of inequality of bargaining power, that factor alone is not sufficient to invalidate an otherwise enforceable arbitration agreement. *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 45.

{¶ 14} This court has consistently rejected a claim of procedural unconscionability under similar circumstances. *See e.g., Neel v. A. Perrino Constr., Inc.*, 2018-Ohio-1826, 113 N.E.3d 70, ¶ 26 (8th Dist.) (plaintiffs were not pressured to sign the contract and they had the opportunity to ask questions before signing; the defendant builder was not the only builder available; and plaintiffs' status as consumers did not free them of their duty to read their contract before signing); *Robinson v. Mayfield Auto Group, L.L.C.,* 2017-Ohio-8739, 100 N.E.3d 978, ¶ 40

(8th Dist.) (the arbitration agreement was not procedurally unconscionable even though the defendant drafted the contract and arbitration was not specifically explained to plaintiff; plaintiff was free to walk away from the contract if he did not like its terms); and *Conte v. Blossom Homes L.L.C.,* 2016-Ohio-7480, 63 N.E.3d 1245, ¶ 23 (8th Dist.) (plaintiff failed to establish he was unable to understand the terms of the arbitration agreement or that he was pressured to sign the contract). The trial court concluded in error that there was no meeting of the minds regarding the arbitration agreement contained in the parties' contract.

### b. Whether the Arbitration Agreement is Substantively Unconscionable

**{¶ 15}** Substantive unconscionability goes to the terms of the contract. *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, ¶ 7 (9th Dist.). "Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable." *Collins*, 86 Ohio App.3d at 834, 621 N.E.2d 1294.

**{¶ 16}** Zubek alleges that the instant arbitration is to be governed by the American Arbitration Association's ("AAA") Construction Industry Arbitration Rules rather than by its Consumer Arbitration Rules. He also alleges that, under the construction arbitration sliding-scale cost schedule, his filing fee alone would be $7,500, based on the amount of damages he sought ($150,000) and a request for three instead of one arbitrator. He argues that the arbitration fees are cost prohibitive and create a chilling effect.

{¶ 17} Zubek is correct that "[t]here is a point at which the costs of arbitration could render a clause unconscionable as a matter of law." *Neel*, 2018-Ohio-1826, 113 N.E.3d 70, at ¶ 18. However, the party claiming substantive unconscionability on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs. *Green Tree Fin.,* 531 U.S. 79, at 92, 121 S.Ct. 513, 148 L.Ed.2d 373. A mere *risk* that a party will be saddled with prohibitive costs is too speculative to invalidate an arbitration agreement. *Id.*

{¶ 18} In its judgment, the trial court found the arbitration agreement to be substantively unconscionable on the ground that the amount of arbitration fees of $7,500 under the Construction Industry Arbitration Rules (based on a request of three arbitrators and damages exceeding $150,000) would exceed the total amount of USA Insulation's total liability ($5,400).

{¶ 19} The trial court's estimation does not appear to be supported by the record. Although Zubek claims he could only file under the Construction Industry Arbitration rules, which requires a much higher filing fee, AAA's Consumer Rules

R-1 does not seem to preclude him from filing under the Consumer Rules.[2] Under the Consumer Arbitration Rules, the consumer's filing fee is capped at $200 regardless of damages sought.

{¶ 20} Zubek would incur the $7,500 filing fee *only if* he chooses to file under the Construction Industry Arbitration Rules rather than the Consumer Arbitration Rules, requests three arbitrators instead of one, and seeks damages in excess of $150,000. Furthermore, if he does file under the Construction Industry Arbitration rules, the arbitration fees will be subject to allocation by the arbitrator in the eventual award. In addition, the arbitrator may find the liability limitation of $5,400 to be unenforceable and invalid.

---

[2] R-1 of AAA's Consumer Arbitration Rules states:

R-1. Applicability (When the AAA Applies These Rules)

(a)      The parties shall have made these Consumer Arbitration Rules ("Rules") a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA"), and

1)      have specified that these Consumer Arbitration Rules shall apply;

2)      have specified that the Supplementary Procedures for Consumer-Related Disputes shall apply, which have been amended and renamed the Consumer Arbitration Rules;

3)      the arbitration agreement is contained within a consumer agreement, as defined below, *that does not specify a particular set of rules*; or

4)      the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the Consumer Arbitration Rules.

(Emphasis added.)

While R-1 (a) states that examples of contracts that typically do not meet the criteria for application of consumer rules include "home instruction and remodeling contracts," the instant insulation contract is one for household service, not "home construction and remodeling."

{¶ 21} In other words, the scenario on which the trial court based its finding of substantive unconscionability is speculative only. As the party complaining of the costs of arbitration, Zubek bears the burden of showing the likelihood they will incur oppressive costs. *Green Tree Fin. Corp.-Alabama*, 531 U.S at 92, 121 S.Ct. 513, 148 L.Ed.2d 373. "[T]he mere risk that a plaintiff would be forced to pay exorbitant costs is too speculative to justify invalidation of the arbitration agreement." *Taylor Bldg.,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 58.

{¶ 22} In addition, this court has interpreted *Taylor Bldg.* to require "specific and individualized evidence that arbitration costs were unduly burdensome to the party opposing it." *McCaskey*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, at ¶ 32. While "the cost of arbitration may be high, so too is the cost of litigating a claim. Indeed, it is quite possible that litigation could result in substantial legal fees and costs that, in the end, exceed the cost of arbitration." *Handler v. Southerland Custom Builders, Inc.,* 8th Dist. Cuyahoga No. 86956, 2006-Ohio-4371, citing *English v. Cornwall Quality Tools Co., Inc.*, 9th Dist. Summit No. 22578, 2005-Ohio-6983, ¶ 17. While Zubek submitted AAA's fee schedules to the trial court, he failed to provide specific evidence to show the arbitration fees exceeded the cost of ligation and were unduly burdensome to him given his financial situation. "Without some evidence that a party would be precluded from bringing a claim, the cost of arbitration, standing alone, is not a justifiable reason to find unconscionability." *McCaskey* at ¶ 34. Given the case law

authority, we are unable to find the arbitration agreement substantively unconscionable on the grounds of arbitration costs.

{¶ 23} Zubek also argues the arbitration agreement is substantively unconscionable because it "eliminates important consumer rights" under the CSPA. In particular, he argues that, should he prevail in his claims, he would be entitled to treble damages and attorney fees, but his rights to these damages would be affected by the limitation of liability contained in the instant contract.[3]

{¶ 24} The courts in Ohio have consistently held that claims under the CSPA do not preclude arbitration. *See, e.g.*, *Khaledi*, 6th Dist. Huron No. H-17-015, 2018-Ohio-3087, at ¶ 13; *Lavelle v. Henderson*, 9th Dist. Summit No. 27921, 2016-Ohio-5313, ¶ 11; *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 10 (9th Dist.); and *Stinger v. Ultimate Warranty Corp.*, 161 Ohio App.3d 122, 2005-Ohio-2595, 829 N.E.2d 735, ¶ 23 (5th Dist.).

{¶ 25} Furthermore, Ohio law does not prohibit an arbitrator from awarding treble damages and attorney fees under the CSPA. *Stehli v. Action Custom Homes*, 11th Dist. Geauga No. 98-G-2189, 1999 Ohio App. LEXIS 4464, 12 (Sep. 24, 1999); and *Zalecki v. Terminix Internatl.*, 6th Dist. Lucas No. L-95-156, 1996 Ohio App. LEXIS 593, 11 (Feb. 23, 1996). Should the arbitrator find USA Insulation acted deceptively or unconscionably in violation of the CSPA and award treble damages,

---

[3] The CSPA permits an award of treble damages under certain circumstances, such as when the defendant's violation of the CSPA involves a deceptive or unconscionable act. R.C. 1345.09(B).

the arbitrator will decide whether the $5,400 limitation of liability is unenforceable and to be severed from the contract — a severability clause in the instant contract allows any provision found invalid to be severed while the remainder of the contract continues in full force and effect. Therefore, contrary to Zubek's allegation, the arbitration agreement does not eliminate Zubek's rights under the CSPA and the arbitration agreement is not substantively unconscionable on this ground.

**Public Policy**

{¶ 26} Zubek also contends that the arbitration agreement violates public policy as applied to his CSPA claims because arbitrations are not open to the public and the arbitrator's findings are not published, which he argues undermines the CSPA's goal of alerting consumers to unfair business practices. Zubek cites no case law authority for his contention.

{¶ 27} As the Ninth District noted in *Tomovich v. USA Waterproofing & Found. Servs.*, 9th Dist. Lorain No. 07CA009150, 2007-Ohio-6214, when there is no confidentiality provision in the arbitration agreement, the results of the arbitration would be readily available to the Attorney General and there would be no bar to the results of the arbitration becoming public information. Here, the arbitration agreement does not contains a confidentiality provision, therefore, Zubek's concerns are not well founded.[4]

---

[4] Zubek also claims the arbitration agreement violates the public policy because the AAA Construction Industry Arbitration Rules R-48(d)(ii)(allowing the arbitrator to award attorney fees to the prevailing party) — so-called "loser-pays" provision — is in conflict with R.C. 1345.09(F) (allowing an award of attorney fees when the consumer files

{¶ 28} Finally, Zubek claims the arbitration agreement violates public policy because it is "inherently unfair to the consumer." Again, he cites no case law authority for this proposition. As we have noted above, the courts in Ohio have consistently held that claims under the CSPA can be submitted to arbitration. Zubek's public policy arguments fail.

{¶ 29} The trial court's judgment denying the defendants' motion to stay proceedings pending arbitration is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

a complaint in bad faith or if the defendant knowingly violated the statute). Zubek cites this court's decision in *Neel* (finding similar language in R.C. 4722.08(D) at odds with R-48(d)(ii)). *Neel,* 2018-Ohio-1826, 113 N.E.3d 70, at ¶ 41-43. The inclusion of "loser-pays" provision in an arbitration agreement has been found to be against public policy. *DeVito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194 (8th Dist.). However, *DeVito* held that the arbitration agreement would be enforceable by severing the offending "loser-pays" provision. Similarly here, the offending fee-shifting provision can be excised from the arbitration agreement without affecting the validity of the parties' agreement to arbitrate.

_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN T. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR